[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14902
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-02452-AT


MARLON CARSON,
LAMAR CLARK,

                                        Plaintiffs-Appellants,

versus

METROPOLITAN ATLANTA RAPID
TRANSIT AUTHORITY (MARTA),
BEVERLY SCOTT,
individually and in her official capacity as
the General Manager of MARTA, et al.,

                                        Defendants-Appellees.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(July 25, 2014)

Before HULL, MARCUS, and ANDERSON, Circuit Judges.

PER CURIAM:

Marlon Carson and Lamar Clark (collectively, "Plaintiffs") jointly appeal from the district court's grant of summary judgment in an employment racial discrimination and retaliation suit brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and 42 U.S.C. § 1981. The suit named as defendants the Plaintiffs' employer, the Metropolitan Atlanta Rapid Transit Authority ("MARTA"), as well as the following MARTA officials in both their individual and official capacities: Beverly Scott, general manager; John M. Weber, director of rails and operations; Linda Lee, general superintendent; Richard Krisak, assistant general manager of rail operations; and Dwight Ferrell, chief operating officer (collectively, "Defendants").

The Plaintiffs' complaint stemmed from their 2009 terminations from their positions with MARTA. Carson, an African-American who worked as a rail line supervisor, alleged that he had been fired for racially discriminatory and retaliatory purposes, under the pretext that he had violated MARTA rules by operating a train while off duty on September 17, 2009, among other misconduct. Clark, an African-American who worked as a rail superintendent, alleged that the Defendants fired him after he had objected to Carson's treatment, under the pretext that Clark had failed to fully investigate Carson's earlier alleged violations of

2

MARTA's radio-operation policies and had forwarded to Carson, without authorization, an e-mail that contained the recordings of the radio transmissions being investigated.

## I. Racial Discrimination

The Plaintiffs first argue that the district court erred in granting summary judgment in favor of the Defendants as to the Title VII and § 1981 claims of racial discrimination. They contend that the Defendants' proffered legitimate, nondiscriminatory reasons for their terminations were contradictory and not credible, and therefore the claims should survive summary judgment.

The Plaintiffs then proceed to list a number of alleged contradictions within the evidence. First, inconsistencies exist as to whether certain defendants had seen a letter written by an individual who had accused Weber of creating a hostile work environment. Second, the evidence included contradictory accounts as to the extent of the Defendants' knowledge regarding Weber's alleged discriminatory conduct. Third, contradictory evidence exists as to the manner in which MARTA investigated and reported Carson's alleged rule violations. Fourth, the evidence shows an inconsistency regarding MARTA's termination policies.

Fifth, the Plaintiffs argue that the evidence presents contradictions as to whether Carson in fact violated MARTA's rules and policies. Ferrell testified in a deposition that Carson was certified and capable of operating one of MARTA's

3

trains, yet Carson's termination letter stated otherwise. Additionally, Weber's office assistant, Dawn Pope, stated in an affidavit that a member of the legal and human resource departments had told her that the Plaintiffs should not have been terminated because they had not disobeyed any rules. Weber also could not explain why Carson's sanctions for violating MARTA's rules far exceeded the required sanctions. Moreover, contradictions existed as to whether Carson had been cleared for duty by the time he operated a train on September 17, 2009. Sixth, the evidence suggests that Clark's termination had been in error. An affidavit from MARTA employee Toya Kellum stated that she overheard Lee tell Clark to stop his investigation into Carson. Krisak later confirmed that, if Clark had been told to stop his investigation, such an instruction would have made a difference as to whether he should have been terminated.

Finally, with regard to Clark's claims of racial discrimination, the Plaintiffs argue that the district court failed to consider Weber's "pattern and practice" of habitually treating African-American subordinates less favorably than white subordinates.

We review the grant of summary judgment *de novo*. *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008). "When deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party."

4

*Id.* at 1341-42.  Once the moving party meets its burden of production, "the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor."  *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008) (quotation omitted).  A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.  *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1162 (11th Cir. 2006) (quotation omitted).

Title VII makes it illegal for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race."  42 U.S.C. § 2000e-2(a)(1).  Likewise, under 42 U.S.C. § 1981, "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens," which in an employment context means protection against discrimination based on race and color.  42 U.S.C. § 1981(a); *see also Standard v. A.B.E.L. Servs. Inc.*, 161 F.3d 1318, 1330-34 (11th Cir. 1998).  Allegations of racial discrimination brought under Title VII and § 1981 are analyzed using the same evidentiary requirements and analytical framework.  *See Standard*, 161 F.3d at 1330.

Because the Plaintiffs concede that they relied upon circumstantial evidence, the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is applicable to their race

5

discrimination claims. *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*) (discussing an ADEA claim).

Under *McDonnell Douglas*, a plaintiff must first establish, by a preponderance of the evidence, a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. To prevail on a claim for racial discrimination under Title VII based on circumstantial evidence, an employee may show that: (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was replaced by a person outside of his protected class or was treated less favorably than a similarly situated individual outside of his protected class. *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003).

If the plaintiff successfully demonstrates a *prima facie* case, the burden then shifts to the employer to produce evidence that its action was taken for a legitimate, non-discriminatory reason. *McDonnell Douglas*, 411 U.S. at 802-03, 93 S.Ct. at 1824. In the third step of the analysis, the plaintiff must show that the employer's proffered reason really is a pretext for unlawful discrimination. *Id.* at 804, 93 S.Ct. at 1825.

The inquiry into pretext requires us to view all of the evidence and "determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude

that the employer's proffered legitimate reasons were not what actually motivated its conduct." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (citation omitted).  Such evidence must demonstrate "weaknesses, implausibilities, inconsistences, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Id.* (quotation omitted).  A plaintiff may not establish pretext simply by questioning the wisdom of the employer's reason.  *Id.* at 1543. Instead, he must meet the employer's reason "head on" and rebut it.  *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004).

A reason is not pretext for discrimination "'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'"  *Brooks*, 446 F.3d at 1163 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993)).  An employee may do that "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jackson v. Ala. State Tenure Comm.*, 405 F.3d 1276, 1289 (11th Cir. 2005) (quotation omitted).  Ultimately, our inquiry is limited to "whether the employer gave an honest explanation of its behavior." *Chapman*, 229 F.3d at 1030 (quotation omitted).

A.    *Carson's Racial Discrimination Claims*

Here, in light of all the evidence, the district court did not err in concluding that the Plaintiffs failed to demonstrate pretext as to Carson's discrimination claims. *See McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825; *Combs*, 106 F.3d at 1538. Although the Plaintiffs base their argument on a string of alleged contradictions in the evidence, a majority of these contradictions are irrelevant to whether Carson actually had violated MARTA rules and policies, and thus do not rebut head-on the proffered legitimate, nondiscriminatory reason for his termination. *See Wilson*, 376 F.3d at 1088; *Combs*, 106 F.3d at 1538.

The only identified inconsistencies that are relevant to the Defendants' reason for terminating Carson concern whether he in fact violated MARTA's policies. However, none of these inconsistencies show that the proffered reason for his termination is unworthy of credence. *See Combs*, 106 F.3d at 1538. Finally, even if the Plaintiffs had shown that the Defendants' proffered reason for the termination had been false, they failed to establish that racial discrimination was the real reason for his firing. *See Brooks*, 446 F.3d at 1163.

B.    *Clark's Racial Discrimination Claim*

Here, the Plaintiffs have not challenged the district court's conclusion that Clark failed to exhaust his administrative remedies with regard to the racial

8

discrimination claim brought under Title VII. Hence, any challenges to the grant of summary judgment on Clark's discrimination claims are limited to the count brought under § 1981. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (holding that a party abandons claims that he does not argue in his brief).

As to the § 1981 discrimination claim, neither of the Plaintiffs' arguments has merit. First, a "pattern and practice" claim only may be brought by the government or a class of private plaintiffs pursuant to Federal Rule of Civil Procedure 23(b)(2). *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 964-65 (11th Cir. 2008). Second, even if the Plaintiffs' argument with regard to pretext has merit, the district court had determined that the Plaintiffs failed to establish a *prima facie* case of discrimination after failing to identify any similarly situated employees outside of Clark's class who had received more favorable treatment. Thus, the Plaintiffs did not first meet their burden regarding a *prima facie* case, nor do they challenge that matter on appeal. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Maynard*, 342 F.3d at 1289.

## II. Retaliation

The Plaintiffs next argue that the district court erred in granting summary judgment as to their Title VII and § 1981 retaliation claims. Regarding Carson's claims, the Plaintiffs contend that his complaints about Weber's routine

discriminatory practices, as well as MARTA's failure to address this discriminatory conduct, constituted what Carson would reasonably believe to be protected expression. Further, the court's assumption that Carson's termination had been too remote in time to his complaints is not supported by the record evidence. Also, an affidavit from MARTA employee Ethel Williams established that, after Carson had filed a 2004 complaint against Weber, Weber had stated that Carson would not advance any further than his current position at MARTA. Regarding Clark's claims, the Plaintiffs argue that he had a good-faith belief that he was engaging in a statutorily protected activity when he declined to investigate or punish Carson, because that sanction exceeded MARTA's rules and policies. Finally, the Plaintiffs argue that the Defendants' proffered legitimate, nondiscriminatory reasons for their terminations were contradictory and not credible.[1]

---

[1] The response brief submitted for this appeal asserts, among other arguments, that the Plaintiffs' appeal should be dismissed for failure to pay the docketing fee. However, the docket sheets for both our clerk's office and the district court indicate that on November 11, 2013, the Plaintiffs paid the required $508, which included the $450 docketing fee, the $5 filing fee, and a $53 returned-items fee for a prior insufficient payment. *See* 11th Cir. R. 3, I.O.P.; 28 U.S.C. § 1917. Accordingly, the Plaintiffs remain in compliance with Rule 3(e). *See* Fed.R.App.P. 3(e) ("Upon filing a notice of appeal, the appellant must pay the district clerk all required fees.").

Also, in their reply brief, the Plaintiffs request a default judgment against defendant MARTA, as well as MARTA's exclusion from oral argument, because MARTA failed to timely file a response brief. The Plaintiffs contend that the submitted response brief came only from the defendants named as individuals, and did not include MARTA. Even assuming, *arguendo,* that MARTA did not join in the response brief, the request for a default ruling in the Plaintiffs' favor is meritless, because the only punishment MARTA could receive is losing the opportunity to be heard on oral argument. *See* Fed.R.App.P. 31(c). Also, because we have decided this appeal

As noted above, we review the grant of summary judgment *de novo*. *Rioux*, 520 F.3d at 1274. Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge" under Title VII. 42 U.S.C. § 2000e–3(a); *see Thompson v. North American Stainless, LP*, 562 U.S. __, ___, 131 S.Ct. 863, 867, 178 L.Ed.2d 694 (2011). Section 1981 of Title 42 also encompasses retaliation claims by an employee. *Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1257-58 (11th Cir. 2012) (citation omitted). A plaintiff seeking to bring a retaliation claim under either statute must first establish a *prima facie* case by showing that (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action. *Id.* at 1258 (quotations omitted).

To state a retaliation claim, the plaintiff need only show that he had a "reasonable belief" that an unlawful employment practice was occurring, and is not required to show that the employer actually engaged in an unlawful employment practice. *Berman v. Orkin Exterminating Co., Inc.*, 160 F.3d 697, 702 (11th Cir. 1998). A plaintiff also may establish causation by showing that the decision-

without the aid of oral argument, the Plaintiffs' request to exclude MARTA from oral argument is moot.

11

makers were "aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." *McCann v. Tillman*, 526 F.3d 1370, 1376 (11th Cir. 2008) (quotations omitted). One way to do this is to demonstrate that there was close temporal proximity between the two events. *Thomas v. Cooper Lighting, Inc.,* 506 F.3d 1361, 1364 (11th Cir. 2007). However, a delay of three to four months is too long, as a matter of law, to prove causation. *Id.*; *see also Maniccia v. Brown*, 171 F.3d 1364, 1370 (11th Cir. 1999) (concluding that "[t]he more than 15-month period that elapsed between Appellant's grievance and the alleged adverse employment actions belies her assertion that the former caused the latter").

With regard to whether an employee has engaged in a statutorily protected activity, an employer may not retaliate against an employee because the employee "has opposed any practice made an unlawful employment practice by" Title VII. 42 U.S.C. § 2000e-3(a). Similarly, an employer may not retaliate against an employee because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Id.* A complaint about an employment practice constitutes protected opposition only if the individual explicitly or implicitly communicates a belief that the practice constitutes unlawful employment discrimination. EEOC Compl. Man. (CCH) §§ 8-II-B(2) (2006); *see also Fed. Express Corp. v. Holowecki*, 552 U.S.

389, 399, 128 S.Ct. 1147, 1156, 170 L.Ed.2d 10 (2008) (stating that the EEOC manual reflects "a body of experience and informed judgment to which courts and litigants my properly resort for guidance").

### A.    Carson's Retaliation Claims

Here, the district court did not err in granting summary judgment as to Carson's Title VII and § 1981 claims of retaliation.  The court correctly concluded that, while Carson did file an internal complaint against Weber in 2004, it was too temporally remote from Carson's termination in 2009 to establish a causal nexus. *See Thomas,* 506 F.3d at 1364.

### B.    Clark's Retaliation Claim

As with the racial discrimination claims, the Defendants have not challenged the district court's conclusion that Clark failed to exhaust his administrative remedies with regard to the retaliation claim brought under Title VII.  Hence, any challenges to the rulings on Clark's retaliation claims are limited to the count brought under § 1981.  *See Sepulveda*, 401 F.3d at 1228 n.2.

As to Clark's § 1981 retaliation claim, the district court did not err in granting summary judgment.  Nothing in the record indicates that Clark either halted his investigation into Carson's alleged violations of radio-transmission policies, or forwarded the e-mail to Carson related to that investigation, in an effort

to oppose MARTA's unlawful employment practices.  *See* 42 U.S.C. § 2000e-3(a); *Gate Gourmet,* 683 F.3d at 1258.

### III.  Conclusion

For the reasons stated above, the district court did not err in granting summary judgment as to all claims brought by the Plaintiffs, and we affirm.

**AFFIRMED.**[2]

---

[2]    Appellees' Motion to File Appendix Out of Time is DENIED.

14