**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

A. B. and A. M. B., by their parents and next friends, C.B. and D.B.; T. T., by her parents and next friends, K.T. and S.T.; A. P., by her parents and next friends, C.P. and M.P,
*Plaintiffs-Appellants*,

v.

HAWAII STATE DEPARTMENT OF EDUCATION; OAHU INTERSCHOLASTIC ASSOCIATION,
*Defendants-Appellees.*

No. 20-15570

D.C. No.
1:18-cv-00477-LEK-RT

OPINION

Appeal from the United States District Court
for the District of Hawaii
Leslie E. Kobayashi, District Judge, Presiding

Argued and Submitted February 4, 2021
Honolulu, Hawaii

Filed April 4, 2022

Before: Richard R. Clifton, Ryan D. Nelson, and
Daniel P. Collins, Circuit Judges.

Opinion by Judge Collins

**SUMMARY**[*]

**Title IX / Class Certification**

The panel reversed the district court's order denying female student athletes' motion for class certification in their action seeking declaratory and injunctive relief to redress alleged violations of Title IX in the athletic programs at a public high school in Hawaii.

Plaintiffs brought Title IX claims for failure to provide equal treatment and benefits, failure to provide male and female students with equivalent opportunities for participation in athletics, and retaliation against female athletes when issues of Title IX compliance were brought to the attention of high school administrators. The district court denied plaintiffs' motion for class certification on the grounds that, under Fed. R. Civ. P. 23(a), they failed to meet the requirement of numerosity, and as to the retaliation claim, commonality and typicality were lacking. The district court concluded that because plaintiffs failed to meet one or more requirements of Rule 23(a), it was not necessary to address the additional requirements of Rule 23(b)(1)(B) and (b)(2).

As to numerosity, the panel held that Rule 23(a)(1) requires a party seeking class certification to show that "the class is so numerous that joinder of all members is impracticable." The panel applied the standard set forth in *Jordan v. County of Los Angeles*, 669 F.2d 1311 (9th Cir. 1982), *vacated*, 459 U.S. 810 (1982), *on remand*, 713 F.2d

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

503 (9th Cir. 1983), *modified*, 726 F.2d 1366 (9th Cir. 1984), which requires consideration of the size of the class as well as potentially countervailing factors including the geographical diversity of class members, the ability of individual claimants to institute separate suits, whether injunctive or declaratory relief is sought, and the ability to identify and locate class members. The panel concluded that the district court failed to give appropriate weight to the very large size of the proposed class, which well exceeded 300 persons, and there were no countervailing case-specific considerations indicating that, despite the large class size, joinder of all class members was nonetheless practicable. The panel held that the district court also erred in failing adequately to consider the fact that the class, as defined, included "future" female student athletes at the high school. The panel therefore reversed the denial of class certification as to plaintiffs' first and second claims and remanded with instructions to address whether plaintiffs also satisfied one or more of the criteria in Rule 23(b).

The panel held that as to plaintiffs' third cause of action for unlawful retaliation, the district court erred in also denying class certification on the further ground that plaintiffs failed to show commonality and typicality because this claim was centered on the high school water polo team, rather than on female student athletes as a whole. The panel concluded that the district court failed adequately to consider plaintiffs' contention that defendants' alleged retaliatory actions had a classwide effect. In addition, the district court failed to properly consider the legal principles that govern a retaliation claim of this nature under Title IX and require consideration of whether plaintiffs fall within the zone of interests that Title IX protects.

The panel held that the district court abused its discretion in concluding that plaintiffs did not meet the requirements of Rule 23(a). The panel therefore reversed the district court's order denying class certification and remanded for it to consider whether plaintiffs satisfied Rule 23(b).

## COUNSEL

Elizabeth Kristen (argued) and Kim Turner, Legal Aid at Work, San Francisco, California; Mateo Caballero and Jongwook Kim, ACLU of Hawaii Foundation, Honolulu, Hawaii; Harrison J. Frahn IV, Simpson Thacher & Bartlett LLP, Palo Alto, California; Jayma Marie Meyer, Simpson Thacher & Bartlett LLP, New York, New York; for Plaintiffs-Appellants.

Ewan C. Rayner (argued) and Kimberly T. Guidry, Deputy Attorneys General; Department of the Attorney General, Honolulu, Hawaii; for Defendant-Appellee Hawaii State Department of Education.

Lyle S. Hosoda and Addison D. Bonner, Hosoda and Bonner LLLC, Honolulu, Hawaii, for Defendant-Appellee Oahu Interscholastic Association.

Lee Brand, Roxane A. Polidora, and Athena G. Rutherford, Pillsbury Winthrop Shaw Pittman LLP, San Francisco, California, for Amici Curiae Civil Rights Organizations.

**OPINION**

COLLINS, Circuit Judge:

Section 901(a) of Title IX of the Education Amendments of 1972 provides that, subject to certain exceptions, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Although Title IX contains no express language creating a private cause of action, the Supreme Court has long held that the statute is enforceable through a judicially recognized implied private right of action. *See Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 65 (1992) (citing *Cannon v. University of Chicago*, 441 U.S. 677 (1979)). Invoking that right of action here, female student athletes at Hawaii's largest public high school brought this putative class action seeking declaratory and injunctive relief to redress multiple alleged violations of Title IX, including systematic discriminatory deficiencies in their school's athletic programs. The district court subsequently denied Plaintiffs' motion for class certification, holding that Plaintiffs had failed to satisfy the requirements of Federal Rule of Civil Procedure 23(a). We authorized this interlocutory appeal under Rule 23(f), and we reverse.

**I**

**A**

Plaintiffs A.B., her younger sister A.M.B., T.T., and A.P. are or were female student athletes at James Campbell High

School ("Campbell") in Ewa Beach on the island of Oahu.[1] At the time A.B. and T.T. moved for class certification in May 2019, all four were members of the Campbell girls' varsity water polo team; A.B. and T.T. were also members of the girls' varsity swimming team; and A.P. was also a member of the girls' varsity soccer team.[2]   A.M.B. later stated that she also planned to join the swimming team. Plaintiffs allege that they and other female students at Campbell "experience grossly unequal treatment, benefits, and opportunities in relation to male athletes," resulting in multiple violations of Title IX.   As a result, A.B. and T.T. filed this suit in December 2018 against Defendant Hawaii State Department of Education ("the Department"), which is the agency that manages Campbell's operations, and Defendant Oahu Interscholastic Association, which is an unincorporated entity that administers high school athletic programs for public high schools on Oahu.   In the operative second amended complaint, Plaintiffs assert three separate causes of action available under Title IX and its implementing regulations: "(1) unequal treatment and benefits in athletic programs; (2) unequal participation opportunities in athletic programs; and (3) retaliation."   *See*

---

[1] A.B. and T.T. were seniors at the time this case was originally filed in late 2018 and graduated before the district court ruled on the class certification motion.   A.P. was a senior at the time this case was argued and has presumably graduated.   A.M.B. was a junior at the time of oral argument and is presumably a current senior.   No party has suggested that this case is moot, and we perceive no basis for concluding that it is.

[2] After the class certification motion was filed, but before the district court denied it, amended complaints were filed adding A.M.B. and A.P. as additional plaintiffs.   All four Plaintiffs submitted declarations in support of the class certification motion.

*Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 851 (9th Cir. 2014).

In their first cause of action, Plaintiffs allege that Defendants violated § 901(a) by failing to provide equal treatment and benefits. We have held that § 901(a)'s prohibition on discriminatory denial of educational benefits, as construed in the U.S. Department of Education's implementing regulation governing school athletic programs, "require[s] equivalence in the availability, quality and kinds of . . . athletic benefits and opportunities provided [to] male and female athletes." *Mansourian v. Regents of Univ. of Cal.*, 602 F.3d 957, 964 (9th Cir. 2010) (internal quotation marks omitted) (citing 34 C.F.R. § 106.41(c)(2)–(10)); *see also* 20 U.S.C. § 1682 (authorizing federal agencies extending federal financial assistance to issue appropriate "rules, regulations, or orders of general applicability"). Plaintiffs allege that Defendants violated this requirement by "failing to provide female student athletes from Campbell with treatment and benefits that are comparable to the treatment and benefits provided to male student athletes."

In support of this claim, Plaintiffs allege, for example, that "male athletes at Campbell have *exclusive* access" to a very large "stand-alone athletic locker room facility that is located near the athletic fields," while "female athletes at Campbell have *no* standalone athletic locker room facility, whether located near the athletic fields or elsewhere on campus." Plaintiffs allege that, as a result, "female athletes, including Plaintiffs, must carry their athletic gear around with them all day and have resorted to changing in teachers' closets, in the bathroom of the nearest Burger King, and even on the practice field, potentially in full view of bystanders." Plaintiffs also allege that, in contrast to Campbell's well-

equipped boys' sports programs, the girls' water polo and soccer programs have not been given adequate equipment, gear, and training facilities. Indeed, the complaint alleges that on multiple occasions, the girls' water polo team lacked any access to a pool for practice, leaving them "no choice but to hold dry-land training sessions and open-ocean swim practices." Plaintiffs also allege that coaches for the girls' teams at Campbell are generally paid less than coaches for the boys' teams, and that some assistant coaches for the girls' teams are not paid at all.

Plaintiffs' second cause of action alleges that Defendants violated § 901(a) by failing to provide male and female students with equivalent opportunities for "participation" in athletics. *See* 20 U.S.C. § 1681(a). Relying again on the regulations implementing § 901(a)'s requirements, we have held that this obligation to provide equivalent participation opportunities requires consideration of "whether 'the selection of sports and levels of competition effectively accommodate the interests and abilities of members of both sexes.'" *Mansourian*, 602 F.3d at 964 (quoting 34 C.F.R. § 106.41(c)(1)). In addressing that question, our precedent applies a "three-part test," under which a school has "three options" for satisfying this obligation: "(1) showing substantial proportionality (the number of women in [interscholastic] athletics is proportionate to their enrollment); (2) proving that the institution has a 'history and continuing practice of program expansion' for the underrepresented sex (in this case, women); or (3) where the [school] cannot satisfy either of the first two options, establishing that it nonetheless 'fully and effectively accommodate[s]' the interests of women." *Id.* at 965 (citation omitted); *see also Ollier*, 768 F.3d at 855 (applying this three-part test to high schools). Plaintiffs' complaint alleges that Defendants' management of athletics at

Campbell fails to satisfy any of these alternative prongs. In particular, Plaintiffs allege that there is 6.6% "participation gap" at Campbell between "female athletic participation" (which is 41.6% of the total number of athletic "roster spots") and "female student body enrollment" (which is 48.2% of the student body).

Plaintiffs' third cause of action is asserted only against the Department and alleges that it violated § 901(a) by retaliating against female athletes at Campbell when A.B., T.T., and others brought issues of Title IX compliance to the attention of Campbell administrators. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 178 (2005) (holding that "the text of Title IX prohibits a funding recipient from retaliating against a person who speaks out against sex discrimination, because such retaliation is intentional 'discrimination' 'on the basis of sex'"). Specifically, Plaintiffs allege that school administrators retaliated by threatening to cancel Campbell's girls' water polo program and by making the water polo team needlessly resubmit program paperwork. Plaintiffs further allege that these retaliatory actions created a "chilling effect among Campbell's female athletes regarding identifying and complaining about other gender inequities in athletics" to the Department.

Plaintiffs' complaint seeks only declaratory and injunctive relief against Defendants, as well as attorneys' fees and costs under 42 U.S.C. § 1988.

**B**

Relying on Federal Rule of Civil Procedure 23(b)(1)(B) and (b)(2), Plaintiffs moved to certify a class of "all present and future Campbell female students and potential students who participate, seek to participate, and/or are or were

deterred from participating in athletics at Campbell." After considering the evidence and arguments of both sides, the district court denied the motion.

The district court held that, as to all three claims, Plaintiffs had failed to make the required threshold showing that the class was "so numerous that joinder of all members is impracticable." *See* FED. R. CIV. P. 23(a)(1). The court noted that the evidence supplied by Defendants indicated that "there were 366 Campbell female student-athletes in the 2018–19 school year." Nonetheless, because the "proposed class members are limited to the female student population from a single high school" and are thus "geographically tied to one area of Hawai`i, and identifiable through school and athletic records," the court concluded that joinder of all class members was not impracticable. Although school records could not similarly identify future or potential female student athletes at Campbell, the district court held that those "subgroups" were irrelevant to the numerosity analysis because neither was "reasonably identifiable."

Turning to the other elements of Rule 23(a), the district court held that Plaintiffs' first and second causes of action— which alleged denial of equal treatment and equal participation opportunities—raised several common questions of law or fact that were "capable of classwide resolution," *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (construing FED. R. CIV. P. 23(a)(2)), and that the individual Plaintiffs' claims under these two causes of action were "typical" of the claims of the class. Specifically, Plaintiffs alleged a number of discrete discriminatory actions with inherently systemic effects on female student athletes, and the resulting "[u]nequal access, treatment, and benefits of athletic programs is a common injury among the named Plaintiffs and proposed class."

By contrast, the district court held that commonality and typicality were lacking with respect to Plaintiffs' third cause of action, which alleges retaliation. Commonality was absent, the court concluded, because the retaliation claim arose from a dispute between "Campbell administrators[] and the water polo team and their parents," and Plaintiffs had not "allege[d] any instances of retaliation against any athletes other than members of the water polo team." For similar reasons, the district court concluded that the alleged retaliatory actions of the Department were "unique to the named Plaintiffs" and were therefore "not typical of the proposed class."

Lastly, the district court found that Plaintiffs would be adequate representatives of the class, without distinguishing among the three claims.

Having concluded that Plaintiffs had failed to satisfy one or more requirements of Rule 23(a), the court stated that it was "not necessary to address" the additional requirements of Rule 23(b)(1)(B) and (b)(2).

Plaintiffs timely petitioned for leave to appeal pursuant to Federal Rule of Civil Procedure 23(f), and a panel of this court granted Plaintiffs' petition. This court has jurisdiction over Plaintiffs' appeal under 28 U.S.C. § 1292(e).

## II

To obtain certification of a plaintiff class under Federal Rule of Civil Procedure 23, a plaintiff must satisfy both the four requirements of Rule 23(a)—"numerosity, commonality, typicality, and adequate representation"—and "one of the three requirements listed in Rule 23(b)." *Wal-Mart*, 564 U.S. at 345, 349. These are not "mere pleading" requirements, and a plaintiff must "affirmatively

demonstrate . . . compliance with the Rule—that is, he [or she] must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id*. at 350. Here, the district court never reached the issue of whether Plaintiffs had shown one of the elements of Rule 23(b),[3] because it concluded that (1) Rule 23(a)'s required threshold showing of numerosity had not been made as to any of Plaintiffs' claims; and (2) Rule 23(a)'s requirements of commonality and typicality had not been shown as to Plaintiffs' retaliation claim. We review these determinations for abuse of discretion, keeping in mind that a "district court abuses its discretion where it commits an error of law, relies on an improper factor, omits a substantial factor, or engages in a clear error of judgment in weighing the correct mix of factors." *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 926 (9th Cir. 2019). Applying those standards, we reverse.

## III

### A

Rule 23(a)(1) requires a party seeking class certification to show that "the class is so numerous that joinder of all members is impracticable." *See* FED. R. CIV. P. 23(a)(1). As the Supreme Court has explained, this "numerosity

---

[3] In moving for class certification, Plaintiffs argued that the requisite element of Rule 23(b) was satisfied either (1) because Defendants had "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," *see* FED. R. CIV. P. 23(b)(2); or (2) because separate actions by individual class members could, "as a practical matter, . . . be dispositive of the interests of the other members" or could "substantially impair or impede [the other members'] ability to protect their interests," *see* FED. R. CIV. P. 23(b)(1)(B).

requirement requires examination of the specific facts of each case and imposes no absolute limitations." *General Tel. Co. of the NW., Inc. v. EEOC*, 446 U.S. 318, 330 (1980). While thus eschewing any bright-line rules, the Court did go on to state that a class with only 15 members "would be too small to meet the numerosity requirement." *Id.*

Plaintiffs contend that we should apply the standards for evaluating numerosity set forth in *Jordan v. County of Los Angeles*, 669 F.2d 1311 (9th Cir. 1982), *vacated*, 459 U.S. 810 (1982), *on remand*, 713 F.2d 503 (9th Cir. 1983), *modified*, 726 F.2d 1366 (9th Cir. 1984). Defendants, however, contend that *Jordan* is no longer good law and in any event is distinguishable. Because the parties have pointed us to no other decision in which we have elaborated on the substantive standards for evaluating numerosity—and our own research has likewise revealed none—we begin by closely examining our decisions in *Jordan*.

In that case, the plaintiff's class action complaint alleged that the defendant county's consideration of "three types of criminal record, *i.e.*, juvenile record, arrest record, and marijuana conviction record" constituted unlawful race discrimination against Blacks in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as well as a violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981. *See* 669 F.2d at 1314–15. The district court denied plaintiff's motion to certify separate classes as to each type of criminal record, concluding that all four requirements of Rule 23(a), including numerosity, had not been satisfied. *Id.* at 1318–23. We initially reversed, holding that all four requirements had been met. *Id.*

In addressing numerosity, *Jordan* indicated that a court must consider what the evidence shows concerning "the absolute number of class members." 669 F.2d at 1319.

Although the size of the class "is not the sole determining factor," we stated that, "where a class is large in numbers, joinder will usually be impracticable." *Id.* By contrast, where the size of the class is more modest, "the number of class members does not weigh as heavily" in the analysis, and "other factors" bearing upon the feasibility and convenience of joinder may assume more significance. *Id.* These potentially countervailing factors include "the geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive or declaratory relief is sought," as well as the ability to identify and locate class members. *Id.* at 1319–20.

Applying these standards, we held that, "[a]lthough we would be inclined to find the numerosity requirement in the present case satisfied solely on the basis of the number of ascertained class members, *i.e.*, 39, 64, and 71, we need not do so since the presence of other indicia of impracticability persuade us that the requirement has been met." *Id.* at 1319. Specifically, we noted that "the relatively small size of each class member's claim and the probability that the class members may be difficult to locate combine to make it impracticable for individual class members to join in the lawsuit." *Id.* at 1319–20. We also observed that each class included "unnamed and unknown future black applicants" and that the "joinder of unknown individuals is inherently impracticable." *Id.* at 1320. Based on these reasons, we held that "the district court erred in denying class certification for failure to satisfy the numerosity requirement." *Id.*

We then proceeded to find that the plaintiff had also satisfied the commonality, typicality, and adequacy requirements of Rule 23(a). *Id.* at 1320–23. However, our analysis of the commonality and typicality factors expressly relied on the Fifth Circuit's so-called "across-the-board"

rule, under which a plaintiff challenging one discriminatory practice was permitted to represent employees challenging *different* practices if all employees suffered similar injuries. *Id*. at 1320, 1322 (citing *Johnson v. Georgia Hwy. Express*, 417 F.2d 1122, 1124 (5th Cir. 1969)). Shortly thereafter, the Supreme Court explicitly rejected that "across-the-board rule," concluding that it improperly relied on a presumption that a discriminatory employment decision against the named plaintiff reflects a pervasive discriminatory policy that is then reflected in all of the defendant's various hiring practices. *See General Tel. Co. of the SW. v. Falcon*, 457 U.S. 147, 157–58 (1982). The Court consequently vacated our decision in *Jordan* for reconsideration in light of *Falcon*. *See Jordan*, 459 U.S. at 810.

On remand, we concluded that, in light of the Supreme Court's intervening abrogation of the across-the-board rule, as well as our "*recomputation* of the actual number of rejected black applicants," the "numerosity requirement of Rule 23" had *not* been met. *See Jordan*, 726 F.2d at 1367 (emphasis added), *amending* 713 F.2d at 504. In reaching that conclusion, however, we did not in any way suggest that our original decision's substantive articulation of the numerosity standards was erroneous. Moreover, *Falcon* does not address the standards for numerosity at all, and it therefore provides no basis for declining to follow our elaboration of the numerosity requirement in our initial decision in *Jordan*. *See Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003) (en banc). Accordingly, we will apply *Jordan*'s framework in assessing numerosity here.

**B**

We conclude that the district court's numerosity analysis was inconsistent with *Jordan* in two respects.

**1**

First, the district court failed to give appropriate weight to the very large size of the proposed class. Plaintiffs presented uncontroverted evidence that in the 2016–2017, 2017–2018, and 2018–2019 school years, the annual number of female student athletes at Campbell ranged between 366 and 434. Thus, even considering only currently enrolled students, the evidence amply shows that a reasonable estimate of the size of the class well exceeds 300 persons.

Defendants contend that Plaintiffs failed to make any showing that all current female student athletes have been subjected to the alleged Title IX violations and are therefore class members, but we think this argument overlooks both the substance of Plaintiffs' claims and the applicable standards for liability under Title IX. Some aspects of Plaintiffs' first cause of action, which alleges unequal treatment and benefits, explicitly rest on allegations of systemic discrimination (such as, for example, the complete lack of standalone athletic locker facilities) that, if proved, would necessarily apply to all current female student athletes. *See supra* at 7–8. As to the second cause of action for unequal participation opportunities, the three-part test we apply for evaluating such claims is framed in terms that examine the school's *overall* treatment of female athletic programs versus male athletic programs. *See supra* at 8. And for reasons we explain further below, we conclude that Plaintiffs' third cause of action for retaliation likewise properly rests upon asserted classwide adverse impacts on female student athletes at Campbell. *See infra* at 24–26. It follows that Plaintiffs amply showed that the absolute number of class members as to each claim is well over 300 persons. The resulting class size qualifies as "large in numbers" by any metric, and therefore, under *Jordan*, that

large class size weighs in favor of concluding that joinder of all of these persons is impracticable.  669 F.2d at 1319.

On this record, we find no countervailing case-specific considerations indicating that, despite the large class size, joinder of all class members is nonetheless practicable.  In concluding that joinder of all class members was practicable here, despite the potential size of the class, the district court emphasized that all of Campbell's current female student athletes could be identified "through school and athletic records" and that all of them were local and within the jurisdiction of the court.  But the standard under Rule 23(a) is not, as the district court seemed to think, whether joinder is a literal impossibility.  Rather, the question is whether joinder of all class members is "*practicable*"—*i.e.*, "*reasonably* capable of being accomplished."  *See Practicable*, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added); *see also Harris v. Palm Springs Alpine Ests., Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964) ("'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class."); *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993) ("Impracticable does not mean impossible.").

Here, joinder of all class members is not "reasonably capable of being accomplished" because it would impose very substantial logistical burdens for little, if any, benefit.  Where, as here, the class seeks only prospective injunctive and declaratory relief, the practical value of joining *each* of the 300+ class members as a formal party is slim to non-existent and is plainly outweighed by the substantial logistical burdens that would entail.  *See Jordan*, 669 F.2d at 1319 (noting that "whether injunctive or declaratory relief is sought" is relevant to assessing whether joinder of class members is impracticable); *see also Harris*, 329 F.2d at 913

(stating that, in assessing impracticability, the court should consider "the expense and burden[] to the parties and the court").

## 2

Second, the district court also failed adequately to consider the fact that the class, as defined, included "future" Campbell female student athletes.

"The inclusion of future class members in a class is not itself unusual or objectionable," because "[w]hen the future persons referenced become members of the class, their claims will necessarily be ripe." *Rodriguez v. Hayes*, 591 F.3d 1105, 1118 (9th Cir. 2010). We have recognized that when, as here, a class's membership changes continually over time, that factor weighs in favor of concluding that joinder of all members is impracticable. *See Jordan*, 669 F.2d at 1320[4]; *see also J.D. v. Azar*, 925 F.3d 1291, 1322

---

[4] Plaintiffs construe *Jordan* as standing for the broader proposition that *any* proposed class that includes future members *automatically* satisfies the numerosity requirement, because future members are inherently unidentifiable at the time of class certification and thereby cannot practicably be joined. We do not read *Jordan* as establishing such a sweeping proposition. As an initial matter, *Jordan*'s assumption that the plaintiff in that case could represent all "future" class members appears to have rested in part on its application of the Fifth Circuit's "across-the-board" rule. *See* 669 F.2d at 1320 (citing *Jack v. American Linen Supply Co.*, 498 F.2d 122 (5th Cir. 1974)). That aspect of the decision therefore did not survive *Falcon*, which would also explain why we did not mention future class members in our decision on remand in *Jordan*. *See* 713 F.2d at 504, *as amended*, 726 F.2d at 1366–67. Moreover, as we explicitly recognized in *Rodriguez*, the inclusion of future class members in a class definition is subject to the ripeness requirement of Article III, *see* 591 F.3d at 1118, and so the relevant numerosity inquiry concerning future class members is whether it would be practicable to join such future members as their claims become ripe.

(D.C. Cir. 2019) (noting that this factor weighs in favor of impracticability of joinder even if current class members are relatively fewer in number); *cf. Smith v. Swormstedt*, 57 U.S. 288, 303 (1854) (indicating, in a pre-Rules equitable suit brought by members and preachers of one branch of a church against those in the other branch, that joinder of all members would be impracticable due to the large and changing membership of the churches); *see generally* 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1762 at 227–29 (4th ed. 2021).

The district court declined to consider this factor because it concluded that future class members were not "reasonably identifiable," and the court therefore could not make a "reasonable approximation" of the number of such members. This reasoning misconstrues the significance of this factor. The fact that it may not be possible to identify future class members at the time of class certification does not mean that this factor therefore drops out of the analysis and may be set aside. On the contrary, as we held in *Jordan*, the fact that the membership of a class changes over time makes joinder of every class member all the more impracticable. *See* 669 F.2d at 1320. This case well illustrates the point. Every year, as new freshmen matriculate into Campbell and as seniors graduate, the membership of potentially 25% of the student body may be expected to turn over. Given the purely equitable nature of the claims, there is little if any benefit to continually joining, or potentially dismissing, large numbers of additional class members. That makes the impracticability analysis all the more lopsided in favor of finding numerosity.

For similar reasons, the district court abused its discretion in concluding that a "reasonable approximation"

of future class members could not be made in this case. Given the three years of data in the record concerning the approximate number of current class members for each school year from 2016–2019, it is not difficult to reasonably estimate the extent to which class membership might be expected to change each year. For present purposes, all that is needed is a sufficient estimate of the number of future class members to allow the court to assess what weight to give to this factor when considered together with the other pertinent considerations. Here, as we have explained, the estimate of the *current* membership is well over 300 persons and already weighs heavily in favor of finding numerosity. The fact that additional persons, totaling as many as 25% of that number, would also need to be formally joined each year tips the balance even more strongly in favor of concluding that the "class is so numerous that joinder of all members is impracticable." *See* FED. R. CIV. P. 23(a)(1).[5]

## C

We therefore conclude that the district court erred in holding that Plaintiffs had not satisfied the numerosity requirement of Rule 23(a). And because that was the sole ground on which the court concluded that the requirements of Rule 23(a) had not been met as to Plaintiffs' first and second causes of action, we reverse the denial of class certification as to those claims and remand with instructions to address whether Plaintiffs also satisfied one or more of the criteria in Rule 23(b).

---

[5] In view of this analysis, we find it unnecessary to address the parties' arguments as to whether numerosity is further established by the presence, in the class definition, of female student *non-athletes* who were deterred from participation in sports by Defendants' alleged Title IX violations.

## IV

As to Plaintiffs' third cause of action for unlawful retaliation, the district court also denied class certification on the further ground that Plaintiffs had failed to show commonality and typicality. This conclusion was also flawed.

The commonality requirement of Rule 23(a)(2) requires plaintiffs seeking class certification to show that their claims "depend upon a common contention" that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. To establish typicality, as required by Rule 23(a)(3), plaintiffs must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). Because the considerations underlying the two requirements overlap considerably, the Supreme Court has noted that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Falcon*, 457 U.S. at 157 n.13.

The district court concluded that these two requirements were not satisfied here, because in its view Plaintiffs' retaliation claim is centered on the water polo team rather than on female student athletes as a whole. As the district court explained, the Department's retaliatory actions arose from "a dispute between Defendants, specifically limited to Campbell administrators, and the water polo team and their

parents," and the only claimed instances of actual retaliation were against "members of the water polo team." This reasoning misapprehends Plaintiffs' retaliation claim and the law governing it.

Although the Department's alleged retaliatory actions were immediately directed at the water polo team, whose members and their parents had made complaints about unequal treatment, the district court failed adequately to consider Plaintiffs' contention that those actions had a classwide effect. Specifically, Plaintiffs assert that the example that the Department made of the girls' water polo team had the effect of broadly dissuading Campbell's female student athletes from "raising the issue of sex discrimination" out of fear that the Department would likewise retaliate against them. Indeed, a declaration submitted by one of the Plaintiffs' parents specifically averred that other students and parents had "expressed interest in joining the lawsuit, but were scared about the repercussions from [the Department] if they did so." This parent explained that, for example, one student who was a "star athlete" and who hoped to win college scholarships, was too afraid "to jeopardize her relationship with the school."

In addition to overlooking the broader theory of unlawful retaliation that Plaintiffs raised here, the district court failed to properly consider the legal principles that govern a retaliation claim of this nature under Title IX. On this point, we find our prior decision in *Ollier* to be instructive, and so we address that decision in some detail.

In *Ollier*, complaints concerning a high school's compliance with Title IX were made by the named plaintiffs' parents and the girls' softball coach, Chris Martinez. 768 F.3d at 853, 866–67. In response, the school fired

Coach Martinez and replaced him with a "far less experienced coach," eliminated the girls' softball team's assistant coaches, and took a variety of other actions that "disrupted" the girls' softball program. *Id*. at 869. On appeal, the defendants made a series of arguments that resemble those made by the Department here. Specifically, the *Ollier* defendants argued that the named plaintiffs "lack[ed] standing to enjoin the retaliatory action allegedly taken against Coach Martinez"; that they also "lack[ed] standing because it was not they who made the Title IX complaints"; and that classwide relief was unwarranted because "only some members of the plaintiff[s'] class . . . can urge they engaged in protected activity." *Id*. at 865–66, 868. We rejected all of these contentions, concluding that they rested on too restrictive a view of Title IX's cause of action for retaliation. *Id.* at 866–69.

We held that the named plaintiffs clearly asserted a sufficient injury-in-fact to satisfy Article III, because their "prospects for competing were hampered" when the defendants "impermissibly retaliated against *them* by firing Coach Martinez." *Id*. at 865 (emphasis in original). We also recognized, however, that what the defendants characterized as "standing" arguments actually rested primarily on the general prudential rule against asserting the rights of third parties. *Id*. (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975)); *cf. Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (noting that "the general prohibition on a litigant's raising another person's legal rights" is "not derived from Article III," but reflects what has inexactly been called the "'prudential' branch of standing"). Addressing the question that way, we held that the named plaintiffs *could* assert a Title IX retaliation claim based on retaliatory actions that were directed at another person (Coach Martinez) and that were triggered by

complaints made by others (Coach Martinez and various parents). *Ollier*, 768 F.3d at 866–67.

In reaching that conclusion, we noted that the Supreme Court had addressed a somewhat similar individual third-party retaliation claim under Title VII in *Thompson v. North American Stainless, LP*, 562 U.S. 170, 177–78 (2011). *See Ollier*, 768 F.3d at 866. There, both Thompson and his fiancée worked in the same company, and the allegation was that Thompson was fired in retaliation for complaints about sex discrimination made by his fiancée. *Thompson*, 562 U.S. at 172. The Court held that, because Thompson was within the "zone of interests" protected by Title VII, he had a cause of action for retaliation even though his fiancée was the one who had engaged in the protected activity that led to the retaliation. *Id*. at 177–78. We concluded in *Ollier* that this same zone-of-interest analysis applies to Title IX, and we therefore considered whether the named plaintiffs in that case were "within the 'zone of interests' that Title IX's implicit antiretaliation provisions seek to protect." *Ollier*, 768 F.3d at 866; *see also Lexmark*, 572 U.S. at 127 & n.3 (suggesting that, in many cases, "third-party standing" is really an issue of whether the party has a cause of action under a statute, which in turn depends in part on the zone-of-interests test). Because those named plaintiffs were students who had suffered a diminished athletic experience due to retaliation, we concluded that they easily fell within Title IX's zone of interests. *Ollier*, 768 F.3d at 866. They therefore had a cause of action under Title IX to seek redress for those injuries, despite the fact that the actual Title IX complaints that led to the retaliation were "made by their parents and Coach Martinez." *Id*. at 866–67.

We similarly held that classwide injunctive relief was properly awarded in *Ollier*, despite the fact that many of the

class members had not even been "members of the softball team at the time of retaliation." *Id*. at 868. In so holding, we reiterated the breadth of Title IX's zone of interests, *see id*. (citing *Thompson*, 562 U.S. at 178), and asserted that we had approved similarly broadly-defined classes that included "all current and future" female students, *id*. (citation omitted). Because the class members in *Ollier* had been affected by the retaliation and were within the zone of interests protected by Title IX's prohibition on retaliation, the district court properly extended its grant of injunctive relief "so as to vindicate the rights of former and future students." *Id*.

Although *Ollier* did not directly address the issue of class certification, *see id.* at 854 n.4, it is clear that the district court's application of Rule 23(a)'s requirements to Plaintiffs' retaliation claim in this case cannot be reconciled with *Ollier*'s analysis of the law governing such claims. Here, as in *Ollier*, the specific Title IX complaints that led to the retaliation were made only by a particular subset of people (here, particular students and parents associated with the water polo team). But the concerns those persons raised swept more broadly to include Campbell's treatment of girls' athletics generally, and Plaintiffs have likewise presented evidence that the resulting retaliation had a deterrent effect on female students more generally. *See supra* at 22. Thus, under *Ollier*'s reasoning, those other putative class members—even those not on the water polo team—would fall within Title IX's zone of interests and would have a cause of action for equitable relief against the Department's retaliatory actions. *See* 768 F.3d at 866–67. And, as in *Ollier*, the fact that many of the class members were not the direct targets of the alleged retaliation would not necessarily be a bar to classwide relief. *Id*. at 868.

It follows from these conclusions that the district court abused its discretion in holding that Plaintiffs had not established commonality and typicality as to their retaliation claim.  Given that the retaliation claims of both the named Plaintiffs and the class members would rest on the underlying motivation for the Department's alleged retaliatory actions in response to receiving Title IX complaints, that issue of retaliatory motive raises a common question whose answer will "resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350.  That is sufficient to satisfy Rule 23(a)(2).

For similar reasons, the district court erred in concluding, in effect, that the direct victims of unlawful retaliation have claims that are atypical of the claims of the indirect victims.  Plaintiffs' retaliation claim is not premised solely on the injury of threatening to cancel Campbell's girls' water polo program and make the water polo team needlessly resubmit program paperwork.  Instead, it is also premised on the "chilling effect" felt by female athletes throughout the high school.  And where, as claimed here, the persons who raised broader concerns about Title IX compliance were met with a retaliatory response that likewise impacted female student athletes generally, the indirect victims' claims *depend* critically upon the success of the direct victims' claims.  As a result, there is little prospect that the named plaintiffs' claims could be said to be burdened with defenses or issues unique to them and distinct from the other class members.  *See Hanon*, 976 F.2d at 508.  Plaintiffs thus established typicality under Rule 23(a)(3).

\*      \*      \*

For the foregoing reasons, the district court abused its discretion in concluding that Plaintiffs had not met the

requirements of Rule 23(a).  We reverse the district court's order denying class certification and remand for it to consider whether Plaintiffs satisfied Rule 23(b).

**REVERSED AND REMANDED.**