Filed 1/10/23  Franklin v. County of Solano CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| TERESA FRANKLIN, <br>     Plaintiff and Appellant, <br> v. <br> COUNTY OF SOLANO, <br>     Defendant and Respondent. | A162752 <br><br> (Solano County <br> Super. Ct. No. FCS052129) |

Plaintiff and appellant Teresa Franklin appeals following the trial court's order granting the motion for summary judgment of defendant and respondent County of Solano (County).  Franklin filed an action alleging age and race discrimination as well as retaliation after she was terminated from her part-time employment at the Solano County Probation Department.

The County moved for summary judgment based on Franklin's lack of evidence to support her claims of discrimination and retaliation.  The trial court granted the motion and found that Franklin failed to present direct or substantial circumstantial evidence to support that her termination was based on a discriminatory or retaliatory motive under the *McDonnell Douglas*[1] test.  We affirm.

_____

[1] *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792.

1

# BACKGROUND

## I.

### *Relevant Facts*

#### A. 2016 Incident with Teresa Franklin

In June 2007, Franklin began working in the County's Probation Department as an extra-help group counselor. This was a part-time, at-will position. Franklin's role was to assist the full-time group counselors and staff in supervising, counseling, transporting and managing any assaultive behavior of juvenile offenders. The County's juvenile detention center had a drug treatment program called "New Foundations" that Franklin assisted in in her capacity as an extra-help counselor. In 2016, Jeffrey Ingram was the supervisor of New Foundations. Carol Marves was the direct supervisor of the extra-help counselors, but she was not responsible for supervising Franklin's day-to-day work. Richard Watson was the interim superintendent of the Probation Department from September 2015 to March 2016. He was previously the Department's Director of Institutions before he retired in late 2013.

On February 16, 2016, Ingram instructed Franklin to accompany Anthony White, a full-time group counselor and peace officer, in transporting six juveniles from the detention center to the food bank in a van. As relevant to her claims of discrimination, Franklin is African-American and was over the age of 40. White is Caucasian and was 23 years old. During the trip, Franklin sat in the front passenger seat while White drove. The six minors (five boys and one girl) sat in the back. There was caging in the van such that the two front seats were separated from the rest of the van. This made it difficult to see into the back of the van if it was dark. There appeared to be no issues during the drive to the two food banks.

2

On the way back to the detention center, it was dark and raining outside. White was driving and played music at a low volume. At one point, Franklin heard a noise or movement over the music and asked the minors what they were doing. They replied they were only dancing, and Franklin told them to stop. White asked Franklin if they could turn on the cabin light but Franklin responded that the light control was at the rear of the van. Franklin chatted with the minors for the remainder of the trip and did not hear any other noises of concern.

When the minors arrived back at the detention center and exited the van, they did not report any issues or problems to Franklin, and Franklin did not observe any physical signs of injury when she spoke to them. Franklin then left to park the van while the minors checked back into the detention center. On February 22, 2016, a staff member noticed that one of the boys from the trip had bruises around his eye. An investigation revealed that the boy was punched several times and that the female minor on the trip had been sexually assaulted in the van. An incident report was drafted that detailed these assaults. Watson read the incident report and spoke to the two minors who had been attacked. They informed him that there was loud music playing and that everyone, including Franklin, was dancing in the van when things "went south." The minors did not say anything about White. Watson did not speak to White or Franklin about what had occurred in the van. Watson concluded that Franklin failed to pay attention to what the minors were doing in the back of the van and terminated her employment on February 23, 2016. Watson did not expect White to be looking in the back of the van since his responsibility was to drive. An investigation as to White

3

took place after Watson left his interim position as superintendent.[2] White received a formal reprimand from the next superintendent but was not terminated.

## B.  2013 Incident with William Franklin

As is relevant to Franklin's claims of associational discrimination and retaliation, Franklin's brother, William,[3] is a group counselor in the County's Probation Department and has been employed at the County for over 23 years.  Watson worked with him in juvenile hall before initially retiring in late 2013.  In March 2013, two juveniles escaped from the detention center while William and two other counselors (one Caucasian and one African-American) were working there.  All three counselors initially received 10-day suspensions due to this incident.  Following settlement discussions with the County, the Caucasian counselor reduced his suspension to one day while the other African-American counselor reduced his suspension to four days.

William filed a grievance with the union with respect to his suspension and the matter proceeded to arbitration in June 2015.  William argued that the County did not have cause to discipline him at all since he was on a lawful break when the escape occurred and was not negligent in his duties. The arbitrator agreed for the most part and issued an opinion on January 8, 2016, that sustained the grievance in part and reduced William's suspension to two days.[4]

---

[2]  An investigation occurred as to White based on his union membership as a full-time group counselor and based on the Peace Officers' Bill of Rights.

[3]  We refer to William Franklin by his first name to avoid confusion and mean no disrespect by it.

[4]  The arbitrator denied the grievance in part after finding that William neglected his duty after the escape and committed several policy violations prior to the escape.

Watson admitted the escape was an embarrassing and humiliating incident that no superintendent wanted to go through. Watson retired before the initial suspensions were imposed on William and the two other counselors and was not involved in William's grievance process or arbitration. Watson did not review the arbitrator's opinion when it came out but recalled that he probably heard about the outcome of the arbitration when he returned as interim superintendent. He does not recall whether he heard about the outcome before or after Franklin's termination.

## II.

### *Motion for Summary Judgment*

Franklin filed a complaint for direct and associational race discrimination, direct and associational retaliation, age discrimination and failure to prevent discrimination and retaliation. These claims were all brought under the Fair Employment and Housing Act (FEHA). Franklin's associational claims for discrimination and retaliation rested on allegations that William's race and grievance complaint were substantial motivating reasons for the County's decision to terminate Franklin. Franklin's direct retaliation claim vaguely alleged that she "reported and/or made complaints to [the County] regarding race discrimination, associational race discrimination, retaliation, and associational retaliation."

The County filed a motion for summary judgment. As to age discrimination, the County argued that the complaint failed to adequately allege that Watson harbored any age bias when he terminated Franklin, or that a younger person subsequently replaced her. As to race discrimination, the County argued that Franklin failed to allege which specific decision-maker at the County harbored racial bias or that disparate treatment of *similarly situated* employees occurred since Franklin was a part-time helper

5

while White was a full-time sworn officer who was inexperienced with food bank trips. The motion further argued that a claim for associational discrimination does not apply to associates of the same race and that even if it did, there was no factual support for the theory that the County suddenly decided to discriminate against Franklin because her brother was African-American after employing both for many years.

With respect to retaliation, the County argued a lack of factual allegations to support the assertion that Franklin reported any discrimination or retaliation to the County prior to her termination. With respect to associational retaliation, the County argued that William's grievance as to his suspension did not qualify as protected activity and no facts supported that the County terminated Franklin as retaliation for the outcome of William's arbitration. Finally, the County contended that the cause of action for failure to prevent discrimination and retaliation could not survive without any actionable, underlying discrimination or retaliation.

In opposition, Franklin briefly argued in support of her age discrimination claim that she was over 40 years old at the time of the subject incident while White was 23 years old. She then stated that additional discovery was required "to determine the age of the other group counselors and supervisors involved in [her] termination." As to race discrimination, Franklin generally argued that there were "disputed facts pertaining to whether County's adverse action against [her] was a legitimate business reason for termination or was a pretext for discrimination."

With respect to retaliation, the opposition alleged that Franklin had complained to her supervisors about "dismissive and rude comments" Ingram had previously made towards her. In support of associational retaliation, Franklin cited to the proximity in time between the January 8, 2016

6

arbitration opinion in William's case and her termination on February 23, 2016.  Franklin then filed a supplemental opposition that included various portions of Watson's deposition testimony to support her claim for associational retaliation.[5]  Specifically, Franklin argued that "[a] jury could infer that Watson's embarrassment and humiliation for the escape of the juveniles in 2013 while under his watch as superintendent resurfaced when the arbitrator ruled against the County" and that "[t]his defeat prompted Watson to terminate [Franklin] within weeks of the arbitrator's decision."

Following oral argument, the trial court granted the County's motion for summary judgment.  The court held that Franklin "presented no direct or substantial circumstantial evidence of race or age discrimination" nor any evidence to challenge the County's race-neutral reason for the disparate discipline as to White based on "his role as the driver, and his need to concentrate his attention on driving."  Similarly, the court found a lack of direct and circumstantial evidence to support a claim for retaliation.[6]  The court further held that associational discrimination did not apply because Franklin and William are the same race.  Finally, the court held that even assuming William's grievance constituted a protected activity and that Watson, the person who decided to terminate Franklin, knew about the arbitration outcome, "this evidence alone is insufficient to survive summary judgment."

The trial court entered judgment in favor of the County and Franklin now appeals.

----

[5] Though Franklin refers to "associational discrimination" in her supplemental opposition, the substance of the argument primarily supported her claim for associational retaliation.

[6] On appeal, Franklin makes no argument as to her claim for direct retaliation.  We therefore deem it forfeited.

7

# DISCUSSION

## I.

### *Standard of Review*

Summary judgment is proper "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant seeking summary judgment "bears the burden of persuasion that there is no triable issue of material fact and that [it] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) A defendant meets this burden by showing that plaintiff "has not established, and cannot reasonably expect to establish," an essential element of his claim. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)

We review a grant of summary judgment de novo, which means we "decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law." (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.) In deciding whether a material issue of fact exists for trial, we "consider all of the evidence set forth in the papers, except the evidence to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence." (Code Civ. Proc., § 437c, subd. (c).) We view the evidence in the light most favorable to the plaintiff, as the nonmoving party. (*Saelzler v. Advanced Group 400, supra,* 25 Cal.4th at p. 768.)

## II.

## McDonnell Douglas *Burden Shifting Test*

Under FEHA, it is unlawful for an employer to engage in adverse employment practices against a person based on age or race. (Gov. Code,[7] § 12940, subd. (a).) Claims of discrimination based on disparate treatment are subject to a three-stage burden-shifting test established by the high court in *McDonnell Douglas Corp. v. Green*, *supra,* 411 U.S. 792. (*Guz v. Bechtel Nat. Inc.* (2000) 24 Cal.4th 317, 354.) This test "reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially. Thus, by successive steps of increasingly narrow focus, the test allows discrimination to be inferred from facts that create a reasonable likelihood of bias and are not satisfactorily explained." (*Ibid*.) The plaintiff bears "the initial burden to establish a prima facie case of discrimination." (*Ibid*.) Although the specific elements may vary depending on the facts of a particular case, the plaintiff must generally make an initial showing that "(1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination . . . , and (4) some other circumstance suggests discriminatory motive." (*Id*. at p. 355.)

If the plaintiff establishes a prima facie case, a presumption or inference of discrimination arises and "the burden shifts to the employer to rebut the presumption by producing admissible evidence . . . that its action was taken for a legitimate, nondiscriminatory reason." (*Guz v. Bechtel Nat. Inc.*, *supra*, 24 Cal.4th at pp. 355-356.) If the employer meets this burden,

---

[7] All further statutory references are to the Government Code unless otherwise specified.

9

"the presumption of discrimination disappears. [Citations.] The plaintiff must then have the opportunity to attack the employer's proffered reasons as pretexts for discrimination, or to offer other evidence of discriminatory motive." (*Id.* at p. 356.) Ultimately, the burden of persuasion remains with the plaintiff. (*Ibid.*) Further, a plaintiff cannot "simply show the employer's decision was wrong, mistaken, or unwise" if it was based on a non-discriminatory reason. (*Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal.App.4th 798, 807 (*Horn*).)

In the context of an employer's motion for summary judgment, the employer, as the moving party, bears the initial burden of showing that one or more of the elements of a prima facie case for discrimination cannot be established or that the adverse employment action was based on legitimate, nondiscriminatory factors. (*Abed v. Western Dental Services, Inc.* (2018) 23 Cal.App.5th 726, 738; *Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 202.) If the employer meets this initial burden, the burden then shifts to the plaintiff to "demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual, or that the employer acted with a discriminatory *animus*, such that a reasonable trier of fact could conclude that the employer engaged in intentional discrimination or other unlawful action." (*Cucuzza v. City of Santa Clara* (2002) 104 Cal.App.4th 1031, 1038.)

### III.

### *Age and Race Discrimination*

Franklin contends that a prima facie case for discrimination was established since she is an African-American woman over 40 years old, had competently performed in the position she held, and suffered an adverse employment action under circumstances that suggests a discriminatory

motive because White was given more favorable treatment.[8]  An inference of discrimination to support a prima facie case may be established by showing that employees similarly situated to the plaintiff engaged in the same misconduct as the plaintiff but received less severe discipline.  (*McGrory v. Applied Signal Technology, Inc.* (2013) 212 Cal.App.4th 1510, 1535.)

Franklin further contends she met her second burden in establishing that the County's proffered reasons for her discharge were untrue.  In support, Franklin argues that Watson jumped to the conclusion that she could see into the back of the van or that she was not paying attention.  She also argues that other factors contributed to the assaults occurring, including Ingram's decision to send juveniles on the food bank trip who did not qualify for furlough and the County's recent policy change that no longer allowed female minors to sit in the front of the van with the counselors.

The County devotes much of its brief in arguing that Franklin failed to establish a prima facie case for discrimination.  The County argues that Franklin failed to show that she was similarly situated enough with either White or the Caucasian counselor involved in William's incident, since the latter two were full-time officers, and failed to show that they all engaged in the *same* misconduct such that their disparate discipline should raise an inference of discrimination.  We need not reach these issues because, even assuming Franklin established a prima facie case, the County proffered a legitimate reason for its decision to terminate her employment and she has not offered evidence sufficient to show or support an inference that this reason was a pretext for discrimination.

---

[8] Although we agree with the County that Franklin's argument in support of age discrimination both below and on appeal is perfunctory at best, we do not deem the issue forfeited.

11

Watson made the decision to terminate Franklin after reading the incident report and speaking with the two minors who had been attacked. He concluded that injuries were allowed to occur to multiple minors because Franklin was not paying attention to what the minors were doing in the van. The incident report noted that the male minor was punched multiple times at different points during the trip and that the female minor was physically attacked while another male minor tried to pull down her pants. The minors told Watson there was loud music playing and they and Franklin were dancing in the van when, as Watson testified, things "went south." Watson did not find fault with White because his responsibility was to drive and not to monitor what the minors were doing in the back. Watson was not involved in any disciplinary decision as to White, which was left to the next superintendent who replaced Watson.

Though Franklin contends that the County's claimed reasons for terminating her employment were untrue, she proffers evidence that, at most, suggests the County's decision was hastily and perhaps unfairly reached. For example, she argues that Watson "jumped to the conclusion" that she was not paying attention to the minors and that she could see into the back of the van without first asking her or any other staff member about what occurred during the trip. This shows that Watson's decision may have been rashly made or even ill-informed but not that it was due to any animus based on Franklin's age or race. Indeed, a plaintiff cannot "simply show the employer's decision was wrong, mistaken, or unwise" but must show that the proffered reasons suffer from such inconsistencies or is so implausible that " ' "a reasonable factfinder *could* rationally find them 'unworthy of credence,' [citation], and hence infer 'that the employer did not act for the [ . . . asserted] non-discriminatory reasons.' " ' " (*Horn, supra,* 72 Cal.App.4th at p. 807,

quoting *Hersant v. Department of Social* Services (1997) 57 Cal.App.4th 997, 1005.)

Franklin also attempts to shift the blame for the subject assaults to the County. She argues that Ingram allowed juveniles who did not qualify for furlough on the food bank trip, that Ingram failed to properly brief Franklin and White as to this fact, and that the County had recently changed its policy so that female minors were required to sit in the back of the van with the male minors instead of in the front seat with the counselors. Again, although these may have been poor decisions and may even have contributed to the problems that led up to Franklin's termination, they do not show the County's reasons for terminating Franklin's employment were based on a discriminatory motive.

Last, Franklin argues that certain "stray remarks" previously made by Ingram constitute further evidence of the County's discriminatory motive in terminating her. For example, Franklin alleged that Ingram commented to others that Franklin's daughter was going to get pregnant and drop out of college. Even assuming this was a racially motivated remark by Ingram, who is also African-American, there is no evidence that he played any part in the decision to terminate Franklin. In the absence of such evidence, these "stray remarks" are not material to whether the County terminated Franklin's employment based on her race. (See *King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 434 [coworkers' animosity or mistreatment toward plaintiff has no bearing in summary judgment proceedings where they were not involved in the decision to terminate plaintiff].)

## IV.

### *Associational Discrimination*

Franklin contends that the County engaged in associational discrimination and associational retaliation based on her relationship with her brother, William. We address these two claims separately even though Franklin confusingly intertwines them into one argument in her briefs.

FEHA prohibits an employer from taking adverse employment action against a person based on his or her race. (§ 12940, subd. (a).) "Race" is defined to include a person's association with another person of a particular race. (§ 12926, subd. (o).) For example, an employer may not subject a Caucasian employee to adverse treatment because she is married to an African-American man. (See *Watson v. Nationwide Ins. Co.* (9th Cir. 1987) 823 F.2d 360.) Here, the complaint alleged that "[William's] race was a substantial motivating reason" for the County's decision to terminate her. Her opposition to the County's motion however, made no argument in support of associational discrimination, and her supplemental opposition argued that Watson terminated Franklin in retaliation after finding out that William received a favorable outcome in his arbitration.

On appeal, Franklin unsurprisingly conflates her unsupported associational discrimination claim with associational retaliation and argues that the County "intentionally discriminated and retaliated against her because of her family relationship with William." Franklin then goes onto argue that both she and William suffered disparate treatment as African-American counselors while Watson was the superintendent and that a connection exists between "his racially disparate treatment of [William] and retaliation against [Franklin]."

14

Putting aside the issue the County raises as to whether associational discrimination applies to associates of the same race, Franklin has not proffered any evidence that Watson's decision to terminate her was motivated by the fact that her brother William is African-American. That William filed a grievance because he allegedly received disparate discipline due to his race is material to whether he was engaged in protected *activity* for purposes of associational retaliation but does not support a claim for associational discrimination, which focuses on one's association with another who possesses a protected *characteristic*. (§ 12926, subd. (o).) Indeed, as the County points out, Franklin and William were both employed by the County for many years and both knew Watson, and there is no evidence to suggest that Watson was suddenly motivated to terminate Franklin because he disliked her association with William because *he* was African-American.

## V.

### *Associational Retaliation*

FEHA prohibits discrimination by an employer "against any person because the person has opposed any practices forbidden under this part or because he has filed a complaint, testified, or assisted in any proceeding under this part." (§ 12940, subd. (h).) Like discrimination, claims of retaliation also follow the *McDonnell Douglas* burden shifting test. "[T]o establish a prima facie case of retaliation under FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042.) If this burden is met, "the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. [Citation.] If the employer produces a

15

legitimate reason for the adverse employment action, the presumption of retaliation 'drops out of the picture,' and the burden shifts back to the employee to prove intentional retaliation. (*Ibid*.)" (*Ibid*.)

As discussed above, Franklin bases her claim of associational retaliation on her brother William's prior grievance and arbitration, which Franklin argues were forms of protected activity. The County argues that FEHA only prohibits *direct* retaliation and does not have an associational aspect to it, unlike discrimination under FEHA. Franklin references the high court's decision in *Thompson v. North American Stainless, LP* (2011) 562 U.S. 170 which recognized a prohibition against associational retaliation under Title VII. The County contends that *Thompson* is not applicable because case authorities interpreting Title VII are only instructive in construing FEHA when the FEHA provision is similar to a provision in Title VII, which is not the case here. We do not reach the merits of this argument because, even assuming associational retaliation is actionable under FEHA, Franklin has not established a prima facie case for retaliation by proffering evidence that the County's reason for terminating her was motivated by a desire to retaliate for her brother's protected activity.

To establish a prima facie case for retaliation, a person must have necessarily engaged in protected activity under FEHA. (§ 12940, subd. (h).) An employee's conduct constitutes protected activity when he or she "has complained of or opposed conduct that the employee reasonably believes to be discriminatory, even when a court later determines the conduct was not actually prohibited by FEHA." (*Yanowitz v. L'Oreal USA, Inc., supra*, 36 Cal.4th at p. 1043.) However, "an employee's unarticulated belief that an employer is engaging in discrimination will not suffice to establish protected conduct for purposes of establishing a prima facie case of retaliation, where

there is no evidence the employer *knew* that the employee's opposition was based upon a reasonable belief that the employer was engaged in discrimination." (*Id.* at p. 1046, italics added.)

Here, William's grievance was based on the claim that the County did not have cause to discipline him because he was on a lawful break at the time the two juveniles escaped from the detention center. The arbitrator's opinion contained no reference to any allegation by William of disparate treatment based on race. William's declaration in support of Franklin's opposition to the County's motion for summary judgment states he believed all along that he was treated differently from his Caucasian co-workers and that he informed the union of this when he initially talked to union representatives about filing a grievance. However, the declaration does not state that William ever accused the County directly of discrimination or informed it of his belief that its decision was discriminatory. Nor does Franklin point to any other evidence suggesting the County knew that William had claimed the County had discriminated against him.

In addition, Franklin proffered no evidence that *Watson* was aware of any assertion by William that he believed his discipline was a product of race discrimination. The evidence that Watson may have learned of the arbitrator's ruling prior to deciding to terminate Franklin's employment (Watson did not recall whether he learned about it before or after) does not support such an inference because, again, the arbitrator's decision makes no reference to any claim of race discrimination.

In short, Franklin has failed to raise a triable issue as to either the element of motivation or the element of causation. The evidence does not show Watson's decision regarding Franklin was motivated by a desire to retaliate for William's race-related protected activity or that there was a

17

causal link between such activity and the decision to terminate her employment.

## VI.

### *Failure to Prevent Discrimination and Retaliation*

In her opposition to the County's motion, Franklin argued that summary adjudication as to the cause of action for failure to prevent discrimination and retaliation should be denied based on her underlying claims of discrimination and retaliation. The trial court ruled in favor of the County with respect to Franklin's claims of discrimination and retaliation and accordingly held that Franklin's failure to prevent claim also failed.

On appeal, Franklin raises a new argument in support of this claim: that the County should have undertaken an adequate investigation before terminating her employment and afforded her the same rights as White, even though White was a full-time employee with union rights. We decline to reach this new argument since it was not raised before the trial court and cannot now create a "triable issue" on appeal from an order granting summary judgment. (*Johanson Transportation Service v. Rich Pik'd Rite Inc.* (1985) 164 Cal.App.3d 583, 588.)

## DISPOSITION

The judgment is affirmed. The County shall recover its costs on appeal.

_____

STEWART, P.J.

We concur.

_____

RICHMAN, J.

_____

MILLER, J.

*Franklin v. County of Solano* (A162752)

19