(Slip Opinion)	OCTOBER TERM, 2010	1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## THOMPSON *v.* NORTH AMERICAN STAINLESS, LP

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 09–291.   Argued December 7, 2010—Decided January 24, 2011

After petitioner Thompson's fiancée, Miriam Regalado, filed a sex discrimination charge with the Equal Employment Opportunity Commission (EEOC) against their employer, respondent North American Stainless (NAS), NAS fired Thompson.  He filed his own charge and a subsequent suit under Title VII of the Civil Rights Act, claiming that NAS fired him to retaliate against Regalado for filing her charge. The District Court granted NAS summary judgment on the ground that third-party retaliation claims were not permitted by Title VII, which prohibits discrimination against an employee "because he has made a [Title VII] charge," 42 U. S. C. §2000e–3(a), and which permits, *inter alia,* a "person claiming to be aggrieved . . . by [an] alleged employment practice" to file a civil action, §2000e–5(f)(1).   The en banc Sixth Circuit affirmed, reasoning that Thompson was not entitled to sue NAS for retaliation because he had not engaged in any activity protected by the statute.

*Held*:

 1. If the facts Thompson alleges are true, his firing by NAS constituted unlawful retaliation.  Title VII's antiretaliation provision must be construed to cover a broad range of employer conduct. *Burlington N. & S. F. R. Co.* v. *White*, 548 U. S. 53.  It prohibits any employer action that "'well might have "dissuaded a reasonable worker from making or supporting a [discrimination] charge,"'" *id.,* at 68.  That test must be applied in an objective fashion, to "avoi[d] the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings."  *Id.,* at 68–69.  A reasonable worker obviously might be dissuaded from engaging in protected activity if she knew that her fiancé would be fired.  Pp. 2–4.

 2. Title VII grants Thompson a cause of action.  Pp. 4–7.

Syllabus

(a) For Title VII standing purposes, the term "person aggrieved" must be construed more narrowly than the outer boundaries of Article III. Dictum in *Trafficante* v. *Metropolitan Life Ins. Co.*, 409 U. S. 205, suggesting that Title VII's aggrievement requirement reaches as far as Article III permits, is too expansive and the Court declines to follow it. At the other extreme, limiting "person aggrieved" to the person who was the subject of unlawful retaliation is an artificially narrow reading. A common usage of the term "person aggrieved" avoids both of these extremes. The Administrative Procedure Act, which authorizes suit to challenge a federal agency by any "person . . . adversely affected or aggrieved . . . within the meaning of a relevant statute," 5 U. S. C. §702, establishes a regime under which a plaintiff may not sue unless he "falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint," *Lujan* v. *National Wildlife Federation*, 497 U. S. 871, 883. Title VII's term "aggrieved" incorporates that test, enabling suit by any plaintiff with an interest "'arguably [sought] to be protected' by the statutes," *National Credit Union Admin.* v. *First Nat. Bank & Trust Co.*, 522 U. S. 479, 495, while excluding plaintiffs who might technically be injured in an Article III sense but whose interests are unrelated to Title VII's statutory prohibitions. Pp. 4–7.

(b) Applying that test here, Thompson falls within the zone of interests protected by Title VII. He was an employee of NAS, and Title VII's purpose is to protect employees from their employers' unlawful actions. Moreover, accepting the facts as alleged, Thompson is not an accidental victim of the retaliation. Hurting him was the unlawful act by which NAS punished Regalado. Thus, Thompson is a person aggrieved with standing to sue under Title VII. P. 7.

567 F. 3d 804, reversed and remanded.

SCALIA, J., delivered the opinion of the Court, in which all other Members joined, except KAGAN, J., who took no part in the consideration or decision of the case. GINSBURG, J., filed a concurring opinion, in which BREYER, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———————

No. 09–291

———————

## ERIC L. THOMPSON, PETITIONER *v.* NORTH AMERICAN STAINLESS, LP

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[January 24, 2011]

JUSTICE SCALIA delivered the opinion of the Court.

Until 2003, both petitioner Eric Thompson and his fiancée, Miriam Regalado, were employees of respondent North American Stainless (NAS). In February 2003, the Equal Employment Opportunity Commission (EEOC) notified NAS that Regalado had filed a charge alleging sex discrimination. Three weeks later, NAS fired Thompson.

Thompson then filed a charge with the EEOC. After conciliation efforts proved unsuccessful, he sued NAS in the United States District Court for the Eastern District of Kentucky under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, 42 U. S. C. §2000e *et seq*., claiming that NAS had fired him in order to retaliate against Regalado for filing her charge with the EEOC. The District Court granted summary judgment to NAS, concluding that Title VII "does not permit third party retaliation claims." 435 F. Supp. 2d 633, 639 (ED Ky. 2006). After a panel of the Sixth Circuit reversed the District Court, the Sixth Circuit granted rehearing en banc and affirmed by a 10-to-6 vote. 567 F. 3d 804 (2009). The court reasoned that because Thompson did not "engag[e] in any statutorily protected

activity, either on his own behalf or on behalf of Miriam Regalado," he "is not included in the class of persons for whom Congress created a retaliation cause of action." *Id.,* at 807–808.

We granted certiorari. 561 U. S. ___ (2010).

I

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge" under Title VII. 42 U. S. C. §2000e–3(a). The statute permits "a person claiming to be aggrieved" to file a charge with the EEOC alleging that the employer committed an unlawful employment practice, and, if the EEOC declines to sue the employer, it permits a civil action to "be brought . . . by the person claiming to be aggrieved . . . by the alleged unlawful employment practice." §2000e–5(b), (f)(1).

It is undisputed that Regalado's filing of a charge with the EEOC was protected conduct under Title VII. In the procedural posture of this case, we are also required to assume that NAS fired Thompson in order to retaliate against Regalado for filing a charge of discrimination. This case therefore presents two questions: First, did NAS's firing of Thompson constitute unlawful retaliation? And second, if it did, does Title VII grant Thompson a cause of action?

II

With regard to the first question, we have little difficulty concluding that if the facts alleged by Thompson are true, then NAS's firing of Thompson violated Title VII. In *Burlington N. & S. F. R. Co.* v. *White*, 548 U. S. 53 (2006), we held that Title VII's antiretaliation provision must be construed to cover a broad range of employer conduct. We reached that conclusion by contrasting the text of Title

VII's antiretaliation provision with its substantive antidis-crimination provision. Title VII prohibits discrimination on the basis of race, color, religion, sex, and national origin "'with respect to . . . compensation, terms, conditions, or privileges of employment,'" and discriminatory practices that would "'deprive any individual of employment oppor-tunities or otherwise adversely affect his status as an employee.'" *Id.*, at 62 (quoting 42 U. S. C. §2000e–2(a) (emphasis deleted)). In contrast, Title VII's antiretaliation provision prohibits an employer from "'discriminat[ing] against any of his employees'" for engaging in protected conduct, without specifying the employer acts that are prohibited. 548 U. S., at 62 (quoting §2000e–3(a) (empha-sis deleted)). Based on this textual distinction and our understanding of the antiretaliation provision's purpose, we held that "the antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employ-ment." *Id.,* at 64. Rather, Title VII's antiretaliation pro-vision prohibits any employer action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.,* at 68 (internal quotation marks omitted).

We think it obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiancé would be fired. Indeed, NAS does not dispute that Thompson's firing meets the standard set forth in *Burlington*. Tr. of Oral Arg. 30. NAS raises the concern, however, that prohibiting reprisals against third parties will lead to difficult line-drawing problems con-cerning the types of relationships entitled to protection. Perhaps retaliating against an employee by firing his fiancée would dissuade the employee from engaging in protected activity, but what about firing an employee's girlfriend, close friend, or trusted co-worker? Applying the *Burlington* standard to third-party reprisals, NAS argues,

will place the employer at risk any time it fires any employee who happens to have a connection to a different employee who filed a charge with the EEOC.

Although we acknowledge the force of this point, we do not think it justifies a categorical rule that third-party reprisals do not violate Title VII. As explained above, we adopted a broad standard in *Burlington* because Title VII's antiretaliation provision is worded broadly. We think there is no textual basis for making an exception to it for third-party reprisals, and a preference for clear rules cannot justify departing from statutory text.

We must also decline to identify a fixed class of relationships for which third-party reprisals are unlawful. We expect that firing a close family member will almost always meet the *Burlington* standard, and inflicting a milder reprisal on a mere acquaintance will almost never do so, but beyond that we are reluctant to generalize. As we explained in *Burlington*, 548 U. S., at 69, "the significance of any given act of retaliation will often depend upon the particular circumstances." Given the broad statutory text and the variety of workplace contexts in which retaliation may occur, Title VII's antiretaliation provision is simply not reducible to a comprehensive set of clear rules. We emphasize, however, that "the provision's standard for judging harm must be objective," so as to "avoi[d] the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings." *Id.,* at 68–69.

## III

The more difficult question in this case is whether Thompson may sue NAS for its alleged violation of Title VII. The statute provides that "a civil action may be brought . . . by the person claiming to be aggrieved." 42 U. S. C. §2000e–5(f)(1). The Sixth Circuit concluded that this provision was merely a reiteration of the requirement

that the plaintiff have Article III standing. 567 F. 3d, at 808, n. 1. We do not understand how that can be. The provision unquestionably permits a person "claiming to be aggrieved" to bring "a civil action." It is arguable that the aggrievement referred to is nothing more than the minimal Article III standing, which consists of injury in fact caused by the defendant and remediable by the court. See *Lujan* v. *Defenders of Wildlife*, 504 U. S. 555, 560–561 (1992). But Thompson's claim undoubtedly meets those requirements, so if that is indeed all that aggrievement consists of, he may sue.

We have suggested in dictum that the Title VII aggrievement requirement conferred a right to sue on all who satisfied Article III standing. *Trafficante* v. *Metropolitan Life Ins. Co.*, 409 U. S. 205 (1972), involved the "person aggrieved" provision of Title VIII (the Fair Housing Act) rather than Title VII. In deciding the case, however, we relied upon, and cited with approval, a Third Circuit opinion involving Title VII, which, we said, "concluded that the words used showed 'a congressional intention to define standing as broadly as is permitted by Article III of the Constitution.'" *Id.*, at 209 (quoting *Hackett* v. *McGuire Bros., Inc.*, 445 F. 2d 442, 446 (1971)). We think that dictum regarding Title VII was too expansive. Indeed, the *Trafficante* opinion did not adhere to it in expressing its Title VIII holding that residents of an apartment complex could sue the owner for his racial discrimination against prospective tenants. The opinion said that the "person aggrieved" of Title VIII was coextensive with Article III "*insofar as tenants of the same housing unit that is charged with discrimination are concerned.*" 409 U. S*.,* at 209 (emphasis added). Later opinions, we must acknowledge, reiterate that the term "aggrieved" in Title VIII reaches as far as Article III permits, see *Bennett* v. *Spear*, 520 U. S. 154, 165–166 (1997); *Gladstone, Realtors* v. *Village of Bellwood*, 441 U. S. 91,

109 (1979), though the holdings of those cases are compatible with the "zone of interests" limitation that we discuss below. In any event, it is Title VII rather than Title VIII that is before us here, and as to that we are surely not bound by the *Trafficante* dictum.

We now find that this dictum was ill-considered, and we decline to follow it. If any person injured in the Article III sense by a Title VII violation could sue, absurd consequences would follow. For example, a shareholder would be able to sue a company for firing a valuable employee for racially discriminatory reasons, so long as he could show that the value of his stock decreased as a consequence. At oral argument Thompson acknowledged that such a suit would not lie, Tr. of Oral Arg. 5–6. We agree, and therefore conclude that the term "aggrieved" must be construed more narrowly than the outer boundaries of Article III.

At the other extreme from the position that "person aggrieved" means anyone with Article III standing, NAS argues that it is a term of art that refers only to the employee who engaged in the protected activity. We know of no other context in which the words carry this artificially narrow meaning, and if that is what Congress intended it would more naturally have said "person claiming to have been discriminated against" rather than "person claiming to be aggrieved." We see no basis in text or prior practice for limiting the latter phrase to the person who was the subject of unlawful retaliation. Moreover, such a reading contradicts the very holding of *Trafficante*, which was that residents of an apartment complex were "person[s] aggrieved" by discrimination against prospective tenants. We see no reason why the same phrase in Title VII should be given a narrower meaning.

In our view there is a common usage of the term "person aggrieved" that avoids the extremity of equating it with Article III and yet is fully consistent with our application of the term in *Trafficante*. The Administrative Procedure

Act, 5 U. S. C. §551 *et seq.*, authorizes suit to challenge a federal agency by any "person . . . adversely affected or aggrieved . . . within the meaning of a relevant statute." §702. We have held that this language establishes a regime under which a plaintiff may not sue unless he "falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." *Lujan* v. *National Wildlife Federation*, 497 U. S. 871, 883 (1990). We have described the "zone of interests" test as denying a right of review "if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Clarke* v. *Securities Industry Assn.*, 479 U. S. 388, 399–400 (1987). We hold that the term "aggrieved" in Title VII incorporates this test, enabling suit by any plaintiff with an interest "arguably [sought] to be protected by the statutes," *National Credit Union Admin.* v. *First Nat. Bank & Trust Co.*, 522 U. S. 479, 495 (1998) (internal quotation marks omitted), while excluding plaintiffs who might technically be injured in an Article III sense but whose interests are unrelated to the statutory prohibitions in Title VII.

Applying that test here, we conclude that Thompson falls within the zone of interests protected by Title VII. Thompson was an employee of NAS, and the purpose of Title VII is to protect employees from their employers' unlawful actions. Moreover, accepting the facts as alleged, Thompson is not an accidental victim of the retaliation—collateral damage, so to speak, of the employer's unlawful act. To the contrary, injuring him was the employer's intended means of harming Regalado. Hurting him was the unlawful act by which the employer punished her. In those circumstances, we think Thompson well within the zone of interests sought to be protected by Title VII. He is a person aggrieved with standing to sue.

Opinion of the Court

\*    \*    \*

The judgment of the Sixth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE KAGAN took no part in the consideration or decision of this case.

# SUPREME COURT OF THE UNITED STATES

No. 09–291

ERIC L. THOMPSON, PETITIONER *v.* NORTH
AMERICAN STAINLESS, LP

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[January 24, 2011]

JUSTICE GINSBURG, with whom JUSTICE BREYER joins,
concurring.

I join the Court's opinion, and add a fortifying observa-
tion: Today's decision accords with the longstanding views
of the Equal Employment Opportunity Commission
(EEOC), the federal agency that administers Title VII. In
its Compliance Manual, the EEOC counsels that Title VII
"prohibit[s] retaliation against someone so closely related
to or associated with the person exercising his or her
statutory rights that it would discourage or prevent the
person from pursuing those rights." Brief for United
States as *Amicus Curiae* 12–13 (quoting EEOC Compli-
ance Manual §8–II(C)(3) (1998)). Such retaliation "can be
challenged," the Manual affirms, "by both the individual
who engaged in protected activity and the relative, where
both are employees." *Id.*, at 25–26 (quoting Compliance
Manual §8–II(B)(3)(c)). The EEOC's statements in the
Manual merit deference under *Skidmore* v. *Swift & Co.*,
323 U. S. 134 (1944). See *Federal Express Corp.* v.
*Holowecki*, 552 U. S. 389, 399–400 (2008). The EEOC's
interpretation of Title VII, I further note, is consistent
with interpretations of analogous statutes by other federal
agencies. See, *e.g.*, *NLRB* v. *Advertisers Mfg. Co.*, 823 F.
2d 1086, 1088–1089 (CA7 1987) (adopting NLRB's position
that retaliation against a relative violates the National

Labor Relations Act); *Tasty Baking Co.* v. *NLRB*, 254 F. 3d 114, 127–128 (CADC 2001) (same), cited in Brief for United States as *Amicus Curiae* 11.