**Michigan Supreme Court**
**Lansing, Michigan**

# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Kathryn L. Loomis

MILLER v DEPARTMENT OF CORRECTIONS

Docket No. 164862. Argued November 9, 2023 (Calendar No. 2). Decided May 10, 2024.

Richard Miller and Brent Whitman filed an action in the Genesee Circuit Court against the Michigan Department of Corrections (MDOC) alleging retaliatory termination in violation of the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq.*; Brenda Miller, Richard Miller's spouse, asserted a derivative loss-of-consortium claim. Richard Miller and Brent Whitman were coworkers and close friends of Cedric Griffey, a deputy warden employed by MDOC. Cedric Griffey's wife, Lisa Griffey, was also employed by MDOC, but resigned due to racist abuse and harassment by her coworkers. Lisa Griffey filed a formal complaint with MDOC regarding the harassment and eventually filed a civil rights lawsuit against MDOC under the ELCRA. After Lisa Griffey filed the formal complaint with MDOC, Cedric Griffey became a target of internal investigations and disciplinary actions by MDOC. Fearing that his job was at risk, Cedric Griffey decided to retire from MDOC. Lisa Griffey's complaint against MDOC was amended to add Cedric Griffey as a plaintiff. Richard Miller and Brent Whitman were also involved in some of the investigations targeting Cedric Griffey, and they were ultimately fired. Plaintiffs filed this action, alleging that Richard Miller and Brent Whitman were fired in retaliation against the Griffeys because of their personal relationship with Cedric Griffey, in violation of the ELCRA. MDOC moved for summary disposition, arguing that plaintiffs had failed to state a claim under the ELCRA because they had not alleged that they had personally engaged in any protected conduct. The circuit court, David J. Newblatt, J., denied MDOC's motion. MDOC appealed, and the Court of Appeals, MURRAY, P.J., and SAWYER and M. J. KELLY, JJ., reversed, concluding that the ELCRA did not authorize plaintiffs' claims. 343 Mich App 104 (2022). Plaintiffs' application for leave to appeal in the Supreme Court was granted. 511 Mich 860 (2023).

In a unanimous opinion by Justice CAVANAGH, the Supreme Court *held*:

MCL 37.2701(a) provides a cause of action for associational or "third party" retaliation claims. Plaintiffs sufficiently pleaded such a claim.

1. MCL 37.2801(1) provides that a person alleging a violation of the ELCRA may bring a civil action for appropriate injunctive relief and/or damages. The ELCRA prohibits an individual, or two or more people, from retaliating or discriminating against a person for opposing a violation of the act or for exercising their rights under the act, MCL 37.2701(a); aiding or coercing a person

to violate the act, MCL 37.2701(b); directly or indirectly attempting to commit conduct prohibited by the act, MCL 37.2701(c); willfully interfering with the performance of a duty of the Civil Rights Commission or any of its members or authorized representatives, MCL 37.2701(d); willfully obstructing a person from complying with the act, MCL 37.2701(e); or coercing, intimidating, threatening, or interfering with a person in the exercise or enjoyment of, "or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by" the act, MCL 37.2701(f). When a person takes adverse action against someone who has engaged in protected conduct, the necessary causal link between the adverse action and the protected conduct is clear. In this case, however, Richard Miller and Brent Whitman alleged that the retaliatory acts taken against them were retaliation against Cedric Griffey for *his* protected actions. Although the word "retaliation" suggests that a plaintiff must allege that they were retaliated against by the defendant, the ELCRA requires only that, to state a claim of retaliation, a plaintiff must allege that (1) the defendant took adverse action against the plaintiff and (2) there is a causal link between the adverse action and a protected act. Richard Miller and Brent Whitman alleged that they had a close relationship with Cedric Griffey, and defendant took adverse action against them in response to Cedric Griffey's protected acts. Additionally, plaintiffs alleged that defendant's actions resulted in economic and noneconomic loss and other harm. Thus, plaintiffs stated a cause of action under the ELCRA. As required by MCL 37.2801(1), plaintiffs alleged a violation of MCL 37.2701(a), asserting that defendants retaliated against a person (Cedric Griffey) because that person opposed a violation of the act, and plaintiffs alleged that defendant's violation caused them to suffer damages, as defined by MCL 37.2801(3). Although MCL 37.2701(a) prohibits retaliation against "a person," it does not specify that the person must be the plaintiff. If retaliation or discrimination under the act is alleged to have occurred, then a violation of the act has been stated. Moreover, MCL 37.2801 does not limit recovery of damages to the person who was directly retaliated against. Rather, a "person" alleging a violation of the ELCRA under MCL 37.2801(1) may bring a civil action for damages. The causal link between the adverse action (defendant's firing of Richard Miller and Brent Whitman in retaliation against Cedric Griffey) and Cedric Griffey's protected acts is Richard Miller's and Brent Whitman's alleged close relationship with Cedric Griffey. Their firings were allegedly part of the effort to retaliate against Cedric Griffey. An associational claim based on these alleged facts is not so clearly unenforceable that no factual development could possibly justify recovery. Whether these facts can be substantiated with evidence is a question for consideration under MCR 2.116(C)(10), not MCR 2.116(C)(8).

2. The Court of Appeals analyzed plaintiffs' claims by looking to *Thompson v North American Stainless, LP*, 562 US 170 (2011). In *Thompson*, the plaintiff and his fiancée were both employed by the defendant. The United States Supreme Court concluded that the plaintiff, who was fired three weeks after his fiancée filed a sex-discrimination claim against the defendant, had an actionable claim under Title VII of the federal Civil Rights Act, 42 USC 2000e *et seq*. Michigan courts have recognized that the ELCRA is modeled after Title VII of the Civil Rights Act, and MCL 37.2701(a) and 42 USC 2000e-3(a), the antiretaliation provisions, have similar language and serve similar purposes. But the Court of Appeals concluded that *Thompson* was not directly applicable to this case because Title VII does not contain a provision analogous to Subsection (f). The Court of Appeals concluded that MCL 37.2701(f) addressed third-party claims because it contains a requirement that the prohibited retaliation be on account of the plaintiff having "aided or encouraged" another person in the exercise of their rights under the act. Therefore, Subsection (f) was applicable here as the more specific provision. Further, the Court of Appeals determined

that allowing a "third party" claim under Subsection (a) would render the "aided or encouraged" requirement in Subsection (f) nugatory. But the Court of Appeals wrongly labeled Subsection (f) as a "third-party retaliation provision" rather than looking to the logical operation of the text. The panel focused on the "aided or encouraged" language in determining that the provision addressed third-party retaliation when in fact, this language prohibits a form of direct retaliation, i.e., retaliation against a person who has "aided or encouraged" another in the invocation of their rights under the ELCRA. Aiding or encouraging another in the exercise of a right under the act is a protected activity; thus, this conduct described in Subsection (f) is direct retaliation, not associational retaliation, and the "aided or encouraged" language protects a claimant against retaliation for their own protected activity, not the protected activity of others.

3. In concluding that Subsection (f) addresses third-party retaliation claims, the Court of Appeals misapplied two canons of statutory interpretation: (1) the general/specific canon, and (2) the surplusage canon. Typically, the general/specific canon applies when two statutes conflict, and to resolve the conflict, the more specific provision prevails over the more general one. However, Subsections (a) and (f) do not conflict. MCL 37.2701 lists six ways that the ELCRA is violated. Multiple subsections may apply to the same conduct and a single retaliatory act may violate the ELCRA in multiple ways. If the application of different subsections in a given case dictated different results, then there would be a conflict between the subsections. But when the subsections overlap and lead to the same result, as in this case, there is no conflict to resolve. The Court of Appeals also unnecessarily applied the canon against surplusage, which requires courts to give effect to every word, phrase, and clause in a statute to avoid rendering any part of a statute surplusage or nugatory. The language of Subsection (a) and Subsection (f) is different enough that, while there is significant overlap, there are factual scenarios that fall uniquely into one provision or the other. Because Subsection (f) covers some unique situations, even if both subsections address third-party retaliation, the surplusage canon does not apply.

4. The Court of Appeals also erred by suggesting that the 1992 amendment of the ELCRA that added Subsection (f) impliedly repealed a portion of Subsection (a). Repeals by implication are disfavored and rare but may be accomplished (1) by the enactment of a subsequent act inconsistent with a former act or (2) by the occupancy of the entire field by a subsequent enactment. In this case, Subsection (f) does not satisfy either test. The "aided or encouraged" language in Subsection (f) does not prohibit the type of retaliation prohibited by Subsection (a), i.e., third-party reprisals, nor does it prohibit anything that Subsection (a) clearly permits. Therefore, there is no conflict, much less one that is irreconcilable. Additionally, the fact that the subsections overlap to any extent does not establish that the amendment that added Subsection (f) covers the whole subject of retaliation and was clearly intended as a substitute for Subsection (a).

Judgment of the Court of Appeals reversed, and case remanded to the circuit court.

# OPINION

Chief Justice:
    Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

FILED  May 10, 2024

STATE OF MICHIGAN

SUPREME COURT

RICHARD MILLER, BRENDA MILLER,
and BRENT WHITMAN,

      Plaintiffs-Appellants,

v                                       No. 164862

DEPARTMENT OF CORRECTIONS,

      Defendant-Appellee.

BEFORE THE ENTIRE BENCH

CAVANAGH, J.

    In this case we address whether a so-called third-party retaliation claim, i.e., where one person claims that they were subjected to retaliation as an indirect attack against someone else who engaged in protected activity, is actionable under the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*., and, if so, precisely where the basis for that right is found in the act. We conclude that the ELCRA prohibits such retaliation under MCL 37.2701(a). MCL 37.2701(a) makes no distinction between direct and third-party

retaliation claims, so a plaintiff may state a claim of either direct or third-party retaliation under that provision and any other provision of MCL 37.2701 that applies to the facts of their case. Accordingly, we reverse the judgment of the Court of Appeals and remand to the Genesee Circuit Court for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

The events of this case began with a dispute between the Michigan Department of Corrections (MDOC) and two of its employees who are not parties here—Lisa Griffey and Cedric Griffey. Lisa Griffey alleged that over a two-year period she experienced a racially hostile work environment with aggressions both subtle and overt. *Griffey v Dep't of Corrections*, unpublished per curiam opinion of the Court of Appeals, issued July 21, 2022 (Docket No. 354322). Lisa Griffey is Black, and her race was the focus of much of the hostility she experienced. Among her complaints were references to and use of offensive racial stereotypes and a suggestion that she be sent to conduct a home visit with a known racist parolee. *Id*. at 2-6. Lisa Griffey alleged that she struggled to deal with the harassment, and her mental health and marriage both suffered over the years as she endured the discrimination. After a particularly offensive comment, she filed an official complaint with her supervisor. *Id*. at 5. Her complaint allegedly only worsened the ostracism and harassment she experienced. *Id*. at 5-7. She voluntarily transferred offices but found her new workplace hostile as well. She discovered that her previous supervisor had warned her new coworkers that she filed harassment complaints. *Id*. at 7. Eventually, she filed a civil action alleging that the MDOC had violated the ELCRA by treating her differently

2

than her white coworkers, subjecting her to a racially hostile work environment, and retaliating against her after she complained of the racial harassment. *Id*. at 9.

Cedric Griffey, Lisa Griffey's husband, was a deputy warden employed by the MDOC. *Id*. at 11. Lisa Griffey shared the details of her harassment with her husband. Following Lisa Griffey's formal complaint of harassment, Cedric Griffey was involved in several internal MDOC investigations. These investigations were, at least ostensibly, unrelated to the harassment of Lisa Griffey and her complaints about that harassment. *Id*. at 12-20. As a result of the investigations and the disciplinary actions taken against him, Cedric Griffey feared that his job was at risk and elected to retire. The complaint Lisa Griffey had already filed was amended to include claims of retaliation against Cedric Griffey by the MDOC. *Id*. at 20. A jury eventually awarded the Griffeys $11,670,128.33. *Id*. at 1.

Richard Miller and Brent Whitman, plaintiffs in this case,[1] were also employees of the MDOC and involved in one of the MDOC investigations.[2] Both Miller and Whitman were ultimately fired and filed this lawsuit alleging that they had been fired in retaliation against the Griffeys in violation of the ELCRA. Plaintiffs alleged that they were close friends with Cedric Griffey and that the relationship was common knowledge. Plaintiffs also alleged that there was a culture of retaliation in the MDOC against employees who embarrassed the organization.

---

[1] Brenda Miller, Richard Miller's spouse, asserts a derivative loss-of-consortium claim.

[2] Plaintiffs contend that these were "sham" investigations.

Defendant moved for summary disposition under MCR 2.118(C)(8) arguing that, because plaintiffs did not allege that they had personally engaged in any protected conduct, they failed to state a claim under the ELCRA. In response, plaintiffs asserted that they had pleaded cognizable "associational" or "third-party" claims and analogized their case to *Thompson v North American Stainless, LP*, 562 US 170; 131 S Ct 863; 178 L Ed 2d 694 (2011), in which the United States Supreme Court held that associational or third-party retaliation claims were actionable under Title VII of the federal Civil Rights Act, 42 USC 2000e *et seq*. The circuit court denied defendant's motion, applying *Thompson*. Defendant appealed, and the Court of Appeals reversed, holding that statutory differences in the Michigan and federal schemes undercut *Thompson*'s persuasiveness in this context and that the ELCRA did not authorize plaintiffs' claims. *Miller v Dep't of Corrections*, 343 Mich App 104; 996 NW2d 738 (2022).

Plaintiffs sought leave to appeal in this Court, which we granted, directing the parties to address "(1) whether the [ELCRA] establishes a right to recover for third-party retaliation claims; and (2) if so, whether the basis for that right is found in MCL 37.2701(a) or MCL 37.2701(f)." *Miller v Dep't of Corrections*, 511 Mich 860, 860 (2023).

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Motions for summary disposition brought under MCR 2.116(C)(8) test "the *legal sufficiency* of a claim based on the factual allegations in the complaint." *Id*. Such motions should be granted only when "a claim is so clearly unenforceable that no factual development could

4

possibly justify recovery." *Id*. at 160.  We also review de novo questions of statutory interpretation.  *Rouch World, LLC v Dep't of Civil Rights*, 510 Mich 398, 410; 987 NW2d 501 (2022).

## III.  ANALYSIS

Pursuant to MCL 37.2801(1), "[a] person alleging a violation of [the ELCRA] may bring a civil action for appropriate injunctive relief or damages, or both."  As used in the statute, " 'damages' means damages for injury or loss caused by each violation of this act, including reasonable attorney's fees."  MCL 37.2801(3).  MCL 37.2701 specifies what conduct constitutes a "violation" of the ELCRA:

> Two or more persons shall not conspire to, or a person shall not:
>
> (a) Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act.
>
> (b) Aid, abet, incite, compel, or coerce a person to engage in a violation of this act.
>
> (c) Attempt directly or indirectly to commit an act prohibited by this act.
>
> (d) Willfully interfere with the performance of a duty or the exercise of a power by the commission or 1 of its members or authorized representatives.
>
> (e) Willfully obstruct or prevent a person from complying with this act or an order issued or rule promulgated under this act.
>
> (f) Coerce, intimidate, threaten, or interfere with a person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.

When a person takes adverse action against someone who has engaged in a protected act, the necessary causal link between the adverse action and the protected act is obvious. The nuance here is that plaintiffs are alleging that the acts taken against *them* were retaliation against *Cedric Griffey* for his protected actions. Intuitively, the notion of "retaliation" suggests that a plaintiff must allege retaliation by a defendant against themselves. However, that is not how these statutes read.[3] All that is required to state a claim of retaliation under the ELCRA are allegations that (1) the defendant took an adverse action against the plaintiff and (2) there is a causal link between the adverse action and a protected act.

In this case, plaintiffs' first amended complaint alleges that plaintiffs had a close relationship with Cedric Griffey and that defendant took adverse actions against plaintiffs in response to Cedric Griffey's protected acts:

> 15. As part of the effort to retaliate against Griffey, Defendant set Plaintiffs up to be terminated. Plaintiffs both had an extremely close relationship with Mr. Griffey, which went beyond being mere co-workers. Specifically:
>
> a. Whitman, Miller, and Griffey considered each other friends;

---

[3] The labels of "direct" as opposed to "third party" or "associational" claims of retaliation highlight this intuitive distinction. We understand "direct" retaliation as a reprisal taken against a person who has themself engaged in protected conduct. In contrast, "third party" or "associational" retaliation is a reprisal taken against someone other than the person who engaged in protected conduct. See *Thompson*, 562 US at 173-174, citing *Burlington N & SFR Co v White*, 548 US 53; 126 S Ct 2405; 165 L Ed 2d 345 (2006). Both constitute retaliation for protected conduct, and both are prohibited under the ELCRA. While the ELCRA, like Title VII, does not use the terms "direct," "third party," or "associational," it does not need to because the language of MCL 37.2701(a) is broadly written and plainly applies to any form of retaliation.

6

b. Mr. Griffey had met and interacted with Plaintiffs['] families;

c. Everyone knew that Miller and Whitman were close to Cedric Griffey;

d. The three shared intimate information about each other's loved ones and families;

e. Plaintiff Whitman's brother even went to Mr. Griffey's house before;

f. Plaintiffs went to Griffey not just as a supervisor, but as a friend they could confide in.

* * *

18. . . . [I]n Defendant's effort to illegally terminate Lisa Griffey, Cedric Griffey and retaliate against them, Lt. Whitman and Plaintiff Lt. Miller were terminated.

* * *

20. Defendant MDOC has a culture of retaliation that ostracizes and punishes employees who bring embarrassment onto the Department, including bringing to light illegal activities and/or discrimination within the ranks.

Plaintiffs also alleged that defendant's actions resulted in economic loss, noneconomic loss, and other harm.

Plaintiffs have stated a cause of action under the ELCRA. As required by MCL 37.2801(1), plaintiffs have alleged a violation of MCL 37.2701(a) by asserting that defendant "[r]etaliate[d] . . . against a person [Cedric Griffey] because the person [Cedric Griffey] . . . opposed a violation of this act . . . ." Plaintiffs allege that this violation of MCL 37.2701(a) caused them to suffer damages as defined by MCL 37.2801(3). MCL 37.2701(a) prohibits retaliation against "a person"; i.e., one may not "[r]etaliate or discriminate against *a person* because *the person* has opposed a violation of this act . . . ."

7

MCL 37.2701(a) does not specify that "the person" need be the plaintiff.[4] If such retaliation or discrimination is alleged to have occurred, a violation of the ELCRA has been stated. MCL 37.2701(a) prohibits retaliation for invoking the rights contained in the ELCRA without limitation as to what form that retaliation might take.

Reading further into the ELCRA, we can see that it clearly provides for this cause of action. Plaintiffs' allegation that defendant fired them to retaliate against Cedric Griffey alleges a violation of MCL 37.2701(a). Accordingly, plaintiffs have satisfied the requirement in MCL 37.2801 that an action must "alleg[e] a violation of this act . . . ." MCL 37.2801 also requires plaintiffs to allege that they suffered damages as a result of the alleged violation. MCL 37.2801 does not limit recovery for damages to the person who was directly retaliated against. Rather, MCL 37.2801(1) states that "a person" alleging a violation of the ELCRA may bring a civil action for damages, including "damages for injury or loss caused by each violation of this act, including reasonable attorney's fees."

In this case, plaintiffs have alleged that they suffered damages caused by defendant's violation of the act—in other words, they suffered damages as a result of defendant firing them in retaliation against Cedric Griffey. The firings are the adverse action. The causal link between the firings and Cedric Griffey's protected acts is explained by plaintiffs' alleged close relationship with Cedric Griffey—the firings of plaintiffs were "part of the effort to retaliate against Griffey[.]" An associational claim based on these

---

[4] Of course, MCL 37.2701(a) does not specify that the person *need not be* the plaintiff, but that observation carries little weight. The logical operation of MCL 37.2701(a) does not contain this limitation, and statutes do not typically specify the requirements they do not contain. There are infinitely many requirements *not* in a statute and, obviously, those cannot all be spelled out explicitly.

8

alleged facts is not "so clearly unenforceable that no factual development could possibly justify recovery." *El-Khalil*, 504 Mich at 160. As recognized by the trial court, "[t]he Court can envision a scenario whereby a defendant could deliberately cause real emotional and psychological pain to a 'reasonable worker' by retaliating against his or her close friend such that he or she would be 'dissuaded from engaging in protected activity.' " See *Thompson*, 562 US at 174. Whether or not these facts can be substantiated with evidence is a question for consideration under MCR 2.116(C)(10), not MCR 2.116(C)(8).

The Court of Appeals took a different tack and began its analysis with *Thompson*. This is an understandable starting point given that Michigan courts have recognized that the ELCRA is "clearly modeled after" its federal counterpart, Title VII of the Civil Rights Act, and have looked to federal caselaw interpreting Title VII when interpreting the ELCRA. *Rasheed v Chrysler Corp*, 445 Mich 109, 123 n 20; 517 NW2d 19 (1994). This is specifically true with respect to MCL 37.2701(a) and 42 USC 2000e-3(a), the antiretaliation provisions, which have similar language and serve similar purposes. See *White v Dep't of Transp*, 334 Mich App 98, 116-117; 964 NW2d 88 (2020). Though not bound by federal court interpretations of Title VII, we generally find them persuasive in interpreting the ELCRA. *Rasheed*, 445 Mich at 123 n 20.

In *Thompson*, the United States Supreme Court considered a claim of so-called "third party retaliation" under Title VII. The plaintiff, Eric Thompson, and his fiancée, Miriam Regalado, were both employed by the defendant. Regalado filed a charge against the defendant alleging sex discrimination, and three weeks later, Thompson was fired. *Thompson*, 562 US at 172. Thompson alleged that his firing was in retaliation for Regalado's protected activity. *Id*. The defendant argued that Thompson was not protected

from retaliation since he had not engaged in any protected activity, though it was undisputed that Regalado had. See *id*. at 172-173. The analogy to the facts of this case is clear.

The *Thompson* Court concluded that such retaliation was prohibited and actionable under Title VII. The Court noted that the antidiscrimination prohibitions of Title VII were limited to actions "with respect to . . . compensation, terms, conditions, or privileges of employment," while the antiretaliation prohibitions of Title VII covered employer action that "discriminate[s] against any . . . employees." *Id*. at 173-174 (quotation marks and citations omitted). The Court noted that it had already held that Title VII's antiretaliation provision prohibited any employer action that " 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' " *Id*. at 174, quoting *Burlington*, 548 US at 68. Given that, the Court thought the third-party claim was clearly included in the statute: "We think it obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiance would be fired." *Thompson*, 562 US at 174. The Court acknowledged that allowing third-party retaliation claims when the relationship between the plaintiff and the protected actor is more attenuated could present "line-drawing problems" but concluded that "a preference for clear rules cannot justify departing from statutory text." *Id*. at 174-175.[5]

---

[5] Following *Thompson*, other courts have addressed the "line drawing" problem and concluded that most familial relationships are sufficient to fall within the protection of Title VII's antiretaliation statute. See *Ward v Athens City Bd of Ed*, 187 F3d 639 (CA 6, 1999) (determining that children could maintain retaliation claim based on protected speech made by their mother); *Nailon v Univ of Cincinnati*, 715 Fed Appx 509 (CA 6, 2017) (evaluating retaliation claim made by an aunt based on the protected speech of her niece). But familial or romantic relationships are not the only types of relationships that are sufficiently close to warrant protection under antiretaliation statutes. See, e.g., *EEOC v Fred Fuller Oil Co*,

The Court of Appeals reasoned that if the ELCRA's text did not deviate from Title VII, then applying *Thompson* would be simple. *Miller*, 343 Mich App at 118. But the Court of Appeals found it significant that MCL 37.2701 does not just contain Subsection (a), which is substantially similar to Title VII, it also contains Subsection (f), which has no Title VII counterpart. See *id*.[6] The panel concluded that Subsection (f) was a specific protection for "third-party retaliation" claims, and because there is no federal counterpart, *Thompson*'s analysis of 42 USC 2000e-3(a) does not explain the operation of MCL 37.2701. *Id*. at 121, 123-124. The panel then looked at MCL 37.2701 as a whole, including Subsection (f). The panel noted that Subsection (f) was engrafted onto the statute in 1992

*Inc*, unpublished opinion of the United States District Court for the District of New Hampshire, issued January 31, 2014 (Case No. 13-cv-295-PB), pp 13, 15-16 (allowing a retaliation claim brought by a "close friend" of an individual who engaged in protected conduct to proceed); *Ali v Dist of Columbia Gov't*, 810 F Supp 2d 78, 89-90 (D DC, 2011) (denying the defendant's motion for summary judgment of third-party retaliation claim brought by the "best friend" of the individual who engaged in protected conduct); *Cobb v Atria Senior Living, Inc*, unpublished opinion of the United States District Court for the District of Connecticut, issued January 29, 2018 (Case No. 3:17-cv-00291), p 12 (concluding that "a relationship of friendship and confidence" between coworkers was sufficient to plead an associational retaliation claim).

The relationship of Cedric Griffey to Richard Miller and Brent Whitman is not familial or romantic, as was the relationship in *Thompson*. The nature of the relationship is not really the issue, however, so much as the causal link between the adverse action and the protected act. When a relationship is close, that is likely to be persuasive evidence of the requisite causal link. The more remote a relationship, the more difficult it will be to prove a sufficient causal link between the adverse action and the protected act. But, as the circuit court observed in this case, that is a matter to be resolved on a motion under MCR 2.116(C)(10) or before a jury.

[6] We agree with the Court of Appeals that the ELCRA differs enough from Title VII that interpreting MCL 37.2701 is more complicated than just importing *Thompson* into our ELCRA jurisprudence. But, as explained below, we disagree with the Court of Appeals that the existence of Subsection (f) negates the applicability of Subsection (a) to claims of third-party retaliation.

and is "an almost verbatim replication of the language contained in the federal Fair Housing Act (FHA), 42 USC 3617." *Miller*, 343 Mich App at 120; see 1992 PA 124. States were required to adopt this language or face losing the ability to handle local FHA complaints. *Id*. The panel gleaned three points about Subsection (f): (1) it addressed third-party claims, (2) its language did not limit its operation to housing matters despite the context of its adoption, and (3) it does not contain the word "retaliate," as Subsection (a) does. *Id*. at 121. As to the last point, the panel noted that if any of the coercive acts that Subsection (f) lists were taken in response to invocation of the ELCRA, that would amount to retaliation.

Relying on the premise that Subsection (f) was the Legislature's provision for third-party claims, the panel found Subsection (f) to be the more specific provision and, thus, the applicable provision. *Id*. at 124-125. Subsection (f) contains a requirement that the prohibited retaliation be "on account of [the plaintiff] having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act." MCL 37.2701(f). According to the Court of Appeals, allowing a "third party" claim under Subsection (a) would render Subsection (f)'s "aided or encouraged" requirement nugatory. *Miller*, 343 Mich App at 124. Therefore, third-party claims are not authorized under Subsection (a). See *id*. Because plaintiffs did not allege that they "aided or encouraged" Cedric Griffey, the panel concluded that they failed to state a claim under Subsection (f). *Id*. at 125-126.

Unlike the Court of Appeals, we do not read Subsection (f) as a limitation on Subsection (a). See *id*. at 125. As always, the ultimate goal in questions of statutory interpretation is "to ascertain and give effect to the Legislature's intent." *Rouch World*, 510 Mich at 410 (quotation marks and citation omitted). In doing so, we sometimes use

canons of statutory interpretation, being mindful that they "are tools that may assist in this endeavor, but they are not straitjackets." *Milne v Robinson*, 513 Mich 1, 12; ___ NW3d ___ (2024). The panel correctly began with the principle that courts should endeavor to read potentially conflicting provisions of a statute harmoniously if possible. See *Nowell v Titan Ins Co*, 466 Mich 478, 482; 648 NW2d 157 (2002); see also 1 Cooley, Constitutional Limitations (4th ed), p 71 ("[O]ne part is not to be allowed to defeat another, if by any reasonable construction the two can be made to stand together.") The Court of Appeals then specifically applied two canons of statutory interpretation in its analysis: (1) when statutes conflict the more specific governs over the more general, and (2) courts give effect to every word, phrase, and clause in a statute to avoid rendering any part of a statute surplusage or nugatory. However, the Court of Appeals misapplied these canons.

The Court of Appeals first went wrong by labeling Subsection (f) as a "third-party retaliation" provision rather than looking to the logical operation of the text. See *Miller*, 343 Mich App at 121. While the Court of Appeals focused on Subsection (f)'s "aided or encouraged" language in proclaiming the subsection a third-party retaliation provision, this language instead prohibits a form of direct retaliation—i.e., taking certain actions against a person who has "aided or encouraged" another in their invocation of ELCRA rights. As the panel acknowledged, "to 'aid or encourage' another in the exercise or enjoyment of a right under the Act is itself a protected activity." *Id.* at 123. The conduct described in this part of Subsection (f) is retaliation for the conduct of the victim, not the conduct of another—in other words, it is direct retaliation, not associational retaliation. Stated differently, the language relied on by the Court of Appeals in Subsection (f) protects a claimant against retaliation for the claimant's *own* protected activity, not the protected

13

activity of others.[7]  This erroneous characterization of Subsection (f) as governing purely associational claims enabled the rest of the Court of Appeals' errors.

Specifically, the Court of Appeals' application of the general/specific canon rests on this error.  As it is typically understood, the canon applies when two statutes conflict, and to resolve the conflict, the more specific provision prevails over the more general one. *Milne*, 513 Mich at 12.  However, Subsections (a) and (f) do not conflict.  MCL 37.2701 lists six ways that the ELCRA is violated.  If a defendant violates one or more subsections, they are liable for the harm they cause.  There are myriad ways a defendant's conduct might violate multiple provisions of MCL 37.2701, but such conduct would simply give rise to multiple violations of the ELCRA and alternative bases on which the plaintiff might rest their case.  If the application of different subsections in a given case dictated different results—that is, if one subsection indicated certain conduct was prohibited while a different subsection said the same conduct was not prohibited—then there would be a conflict between the subsections.  But where, as here, the subsections overlap and lead to *the same* result—the defendant engaged in prohibited conduct—there is no conflict to resolve. Simply put, multiple subsections may apply to the same conduct, and a single retaliatory act may violate the ELCRA in multiple ways.

---

[7] The Court of Appeals also intimated that the phrase "any other person" in Subsection (f) creates a third-party retaliation claim.  See *Miller*, 343 Mich App at 120 (emphasizing "any other person" in the statutory text).  But the "other person" language is not indicative of a third-party retaliation claim; rather, it refers to the actor's own right to not be retaliated against for aiding or encouraging another person in the exercise of that other person's rights under the ELCRA.

14

The Court of Appeals' insistence that Subsection (f) is purely a "third party" retaliation provision also led it to unnecessarily apply the canon against surplusage. The language of the provisions is different enough that, while they have significant overlap, there are factual scenarios falling uniquely into one or the other. Subsection (a) is limited to retaliation against a person who "opposed a violation of this act" or "participated in an investigation, proceeding, or hearing under this act." Subsection (f), in contrast, applies whenever a person "aided or encouraged any other person in the exercise or enjoyment of[] any right granted or protected by this act." Unlike Subsection (a), Subsection (f) does not require the act of "aid[ing] or encourag[ing]" to be in response to a violation of the ELCRA—an employee could have "aided or encouraged" another employee before any violation occurred. Thus, even if both subsections provide a third-party retaliation claim, Subsection (f) covers at least some unique situations, so the surplusage canon does not apply. See *Baker v Gen Motors Corp*, 409 Mich 639, 665; 297 NW2d 387 (1980) (holding that statutory language was not rendered nugatory by an amendment because the original language "retain[ed] independent significance"). Moreover, the Court of Appeals recognized that Subsection (f) retains independent meaning (i.e., is not rendered surplusage) even if it does not govern third-party retaliation claims at all. *Miller*, 343 Mich App at 123 n 9 ("Subsection (f) can be violated without the conduct being retaliatory in nature, even though it is still coercive, intimidating, interfering, or threatening.").

In its effort to harmonize the two provisions, the Court of Appeals also erred by suggesting that the 1992 amendment of the ELCRA, which added Subsection (f), impliedly

15

repealed at least a portion of Subsection (a).[8] It is axiomatic that "repeals by implication are disfavored." *Int'l Business Machines Corp v Dep't of Treasury*, 496 Mich 642, 651; 852 NW2d 865 (2014) (opinion by VIVIANO, J.) (quotation marks and citation omitted). Findings of implied repeal are rare, but implied repeal may be accomplished (1) "by the enactment of a subsequent act inconsistent with a former act" or (2) "by the occupancy of the entire field by a subsequent enactment." *Id.* (quotation marks and citation omitted). Courts must determine if there is "*any other reasonable construction* that would harmonize the two statutes and avoid a repeal by implication." *Id.* at 660.

In this case, Subsection (f) does not satisfy either test. The "aided or encouraged" language relied on by the Court of Appeals does not permit the type of retaliation prohibited by Subsection (a), i.e., third-party reprisal claims.[9] Nor does it prohibit anything that Subsection (a) clearly permits. Therefore, there is no conflict—much less an irreconcilable

---

[8] *Miller*, 343 Mich App at 118 ("If only Subsection (a) were at issue, we would need to go no further to conclude that *Thompson* was persuasive and that a third-party retaliation claim of the caliber discussed in *Thompson* could be brought under the Act, even when—as here and in *Thompson*—the plaintiff was retaliated against for someone else engaging in a protected activity."); see also *id.* at 119 ("If we only considered Subsection (a) in isolation, we could potentially reach a conclusion that does not square with the remainder of MCL 37.2701, and our obligation is to enforce all parts of the statute and to read them together harmoniously if possible."); *id.* at 124 ("[I]n light of Subsection (f), we cannot employ *Thompson*'s reading of Title VII to discern the meaning of Subsection (a), because that reading would essentially swallow up and nullify Subsection (f)'s requirement that only a third party who 'aids or encourages' another employee cannot then be coerced, intimidated, etc., by an employer.").

[9] While the Court of Appeals erred by concluding that the "aided or encouraged" language in Subsection (f) creates a third-party retaliation claim, we need not consider in this case whether the first clause of that subsection might encompass a third-party claim, for example, where a plaintiff is terminated in an attempt to "[c]oerce, intimidate, threaten, or interfere with" an employee "in the exercise or enjoyment of . . . any right granted or protected by this act."

one. In addition, to the extent that there is some overlap or redundancy between the retaliation claims that can be asserted under the subsections, it cannot be fairly said that the 1992 amendments that added Subsection (f) cover the whole subject of retaliation and were clearly intended as a substitute for Subsection (a). Imputing this intention to the Legislature strains the bounds of credulity. Certainly, MCL 37.2701 must be read as a whole. But there is no reason its subsections cannot overlap. Indeed, it is clear that they sometimes do.[10]

To the extent that our interpretation might render Subsection (f)'s "aided or encouraged" requirement nugatory, the surplusage canon, like other canons, "is not an absolute rule." See *People v Pinkney*, 501 Mich 259, 283; 912 NW2d 535 (2018). Indeed, "[s]ometimes drafters do repeat themselves and do include words that add nothing of substance, either out of a flawed sense of style or to engage in the ill-conceived but lamentably common belt-and-suspenders approach." Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), pp 176-177 (emphasis omitted). Or perhaps repetition might occur when drafters adopt language solely to comply with a federal mandate, as may be the case here. As the panel observed, the Legislature enacted nearly verbatim language from § 3617 of the FHA and in doing so satisfied certain federal certification requirements for state or local review of complaints alleging discriminatory housing practices under the Act. *Miller*, 343 Mich App at 120. In such circumstances, any redundancies are properly viewed more in the nature of a belt-and-

---

[10] For example, Subsection (b) says no person shall "[a]id, abet, incite, compel, or coerce a person to engage in a violation of this act." MCL 37.2701(b). Subsection (b) cannot be violated without a predicate violation of some other provision.

suspenders approach than as an indication that the Legislature intended to implicitly narrow the scope of the pre-existing provisions of the ELCRA.

In sum, the Court of Appeals wrongly concluded that Subsection (f) exclusively addresses third-party or associational retaliation claims and, based on this misunderstanding, applied inapplicable canons of statutory interpretation to unduly limit what is otherwise clear regarding the operation of Subsection (a) when read in conjunction with MCL 37.2801. Properly understood, Subsection (a) permits the type of third-party claim implicated in this case, so the trial court correctly denied defendant's motion for summary disposition under MCR 2.116(C)(8).

## IV. CONCLUSION

MCL 37.2701(a) provides a cause of action for associational or "third party" retaliation claims, and plaintiffs' first amended complaint sufficiently pleaded such a claim. Accordingly, we reverse the judgment of the Court of Appeals and remand to the Genesee Circuit Court for further proceedings.

Megan K. Cavanagh
Elizabeth T. Clement
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden

18